FOSTER *vs*. BEARDSLEY SCYTHE COMPANY and others.

There can be no delivery of a deed without an acceptance. It is necessary to its validity that there should be a grantee willing to accept it.

Although a delivery of a deed or mortgage to the county clerk, for the use of a grantee or mortgagee, to be recorded, and a subsequent assent to the same by the grantee or mortgagee, is equivalent to an actual delivery to him, and will prevail against a subsequent deed made *after such assent*, yet if after such a delivery to the clerk, and before such assent, the grantor conveys the mortgaged premises to a third party, who receives the conveyance in good faith, the first deed or mortgage will not prevail, as against the latter conveyance.

A mortgage, at the time it was acknowledged, was left with the officer before whom the acknowledgment was made, to be taken by him to the county clerk's office to be recorded. The money to pay the clerk's fees was advanced to him by the mortgagors, but no directions were given, as to the ultimate disposition of the mortgage, after it should be recorded. The mortgage was left at the clerk's office by the officer, the fees paid, and it was recorded. It never was, in fact, delivered to the mortgagees, at least not until some months after a deed of the premises from the mortgagors to the plaintiff had been executed, delivered and recorded; nor had the mortgagee any notice or knowledge of the existence of such mortgage until a considerable time after the execution of such deed; nor did it ever have possession thereof. It appeared by the admissions of the mortgagors, and other proof, that the mortgage was executed and recorded by them without the knowledge of the mortgagee, and for the purpose of keeping off other creditors.

*Held* that there was no valid delivery of the mortgage, by the mortgagors to the mortgagee, or to any person for it; and that the same was therefore void as a lien prior to the deed of the plaintiff.

APPEAL from a judgment rendered at a special term. The action was brought to restrain the foreclosure of a mortgage, and to set the same aside, on the ground that such mortgage was never delivered to or for the grantee. On the 11th of May, 1858, the plaintiff purchased from the defendants, Osborn & Clow, a lot of land in Port Byron, for the sum of $1200, and took a conveyance thereof. At the time of the plaintiff's purchase there were three mortgages upon the property, appearing on the records in the clerk's office. Two of these mortgages, for about the full amount of the purchase money, were assumed by the plaintiff, and paid by him on account of the purchase money. The third mort-

· gage, purporting to have been given by Osborn & Clow, to Beardsley Scythe Company, for $1500, dated February 25, 1858, had been made and put upon the record by Osborn & Clow, without the knowledge of the mortgagee, and had never been delivered to the mortgagee, nor to any one for it, as claimed by the plaintiff; but was made merely to keep off creditors. The plaintiff was informed of the exact condition of this mortgage, when he purchased, and was authorized by Osborn & Clow to take it from the clerk's office, which he did, and has ever since held it. In the fall of 1858, Osborn had a difficulty with the plaintiff, and then for the first time informed the scythe company of the existence of this mortgage. After delaying about four years to make any claim under such mortgage, the Beardsley Scythe Company commenced proceedings to foreclose the same, under the statute. This action was thereupon brought to restrain those proceedings. It was tried at a special term held at Auburn in October, 1865, before Justice J. C. SMITH. The judge found the above facts, substantially, and that the said mortgage was never delivered by the mortgagors, to the grantee, or for its use; and as matter of law he decided that the said mortgage to the scythe company, and the record thereof, were a cloud upon the plaintiff's title, and that the plaintiff was entitled to judgment for the relief demanded, with costs, against the defendant, the Beardsley Scythe Company. Judgment being entered accordingly, the Beardsley Scythe Company appealed, and upon a case and exceptions moved for a new trial.

*Finlay M. King,* for the appellants. I. The mortgage from Osborn & Clow to the Beardsley Scythe Company was duly executed; it was for a *bona fide* debt; it was legally delivered to, and accepted by, the grantee, and no part thereof has ever been paid; and it has never been satisfied, or in any manner discharged.

II. The delivery of the mortgage, by the grantors, to the

county clerk to be recorded, was sufficient to pass the title, and to vest the same in the mortgagees. 1. It being beneficial to them, their acceptance of the mortgage will be presumed. But there is positive evidence of their acceptance of the mortgage. (*Church* v. *Gilman*, 15 *Wend*. 656.) 2. If the delivery to the third person be absolute, the estate passes. That is this case. (*Church* v. *Gilman*, *supra*. *Jackson* v. *Bodle*, 20 *John*. 184, 187. 1 *Pick*. 141. 6 *Barb*. 98.) 3. The decision of the judge, therefore, "That said mortgage is void for want of delivery," is not sustained either by the facts or by the law. 4. Nor is the conclusion consistent with the judge's finding of fact, that Osborn & Clow " caused the same mortgage to be recorded in the office of the clerk of the county of Cayuga." That was a delivery. (*See* 15 *Wend*. 656; 20 *John*. 184; 12 *Pick*. 141; *Church* v. *Gilman*, *supra*; 6 *Barb*. 98.)

III. The plaintiff—himself guilty of fraud—asks a court of equity for relief, to the injury of a *bona fide* creditor, who is innocent of all fraud. No court will sanction such a proceeding. The facts show that the mortgage having been made with intent to hinder, delay or defraud creditors, is absolutely void. (3 *R. S.* 5th ed. 224, § 1. *Id*. 219, § 1.) And the law refuses its aid to carry out any such transaction. (*Nellis* v. *Clark*, 20 *Wend*. 24. 4 *Hill*, 424. *Cary* v. *Hotaling*, 1 *Hill*, 311. *Moseley* v. *Moseley*, 15 *N. Y. Rep*. 334. *Morgan* v. *Chamberlain*, 26 *Barb*. 163.) Foster having taken his deed with full knowledge of the existence of the mortgage, is estopped from denying its proper delivery, or the *bona fides* of the mortgage.

IV. The acceptance of the mortgage by the Beardsley Scythe Company, after it was recorded, relates back to the time it was so recorded. (*Rathbun* v. *Rathbun*, 6 *Barb*. 98.) 1. If Foster was not a *bona fide* purchaser, it is of no consequence when the scythe company signified its acceptance of the mortgage. 2. The mortgage was a valid lien from the time of its delivery for record. 3. The principle is well

settled that the delivery of a deed to the clerk, for record, for the use of the mortgagee, is a delivery to the mortgagee. (*Elsey* v. *Metcalf,* 1 *Denio,* 326. *Rathbun* v. *Rathbun,* 6 *Barb.* 98. *Brown* v. *Austin,* 22 *How. Pr.* 394.)

V. The written disclaimer given by Clow & Osborn, after they conveyed to Foster, is not evidence; because 1. It was made after the execution and delivery of the mortgage vesting their interest in the land in the scythe company. No statement of the mortgagors could therefore invalidate or impeach the title of the mortgagees. 2. It was a mere statement without oath, of what the mortgagees, if competent, could not be called upon as witnesses to prove. (*Jackson* v. *Richards,* 6 *Cowen,* 617, 622.) 3. Indeed, all of the declarations of Clow & Osborn were incompetent, and the exceptions to their admission well taken.

VI. There is nothing in the plaintiff's claim that a suit was commenced and is still pending to compel Foster to account for the credits and moneys received by him for Clow & Osborn.

VII. Though Foster was free from the charge of fraud, and though he had been a *bona fide* creditor, (which is not admitted,) still Osborn's *intent* to hinder and delay creditors, renders the deed absolutely void. (*Rathbun* v. *Platner,* 18 *Barb.* 272. *Mohawk Bank* v. *Atwater,* 2 *Paige,* 54. *Browning* v. *Hart,* 6 *Barb.* 91. *Tifft* v. *Barton,* 4 *Denio,* 171.) It was Foster's own offer to take conveyances of the property, in order that creditors could not oppress Osborn, and his " creditors be compelled to wait for their collections." 2. No consideration was paid for the deed.

VIII. The judge at special term erred in refusing to find as requested, in each, every and all of the defendant's requests.

*H. V. Howland,* for the respondent. I. The fact being established that this mortgage was never delivered to or for the grantee, the statute makes it of no effect whatever; and no title or interest ever vested in the grantee. (3 *R. S.* 5th *ed.* 29, § 158.) And at any time before a delivery had been

made, the grantors, or any one by their direction, had a right to take the mortgage from the files of the clerk's office, even after it was recorded; and no title passed by the simple recording of the mortgage by the grantors. (*Van Valen* v. *Schemerhorn*, 22 *How. Pr.* 416. 11 *Paige*, 564. 12 *John.* 418. 1 *Denio*, 323.) The mortgage was never delivered to or for the grantee, as the judge has found, and all the evidence proves. And this fact being found in the plaintiff's favor, disposes of every other question in the case, as it underlies all others.

II. The defendants claimed, on the trial, that Foster's purchase of the premises was fraudulent, as against Osborn & Clow's creditors. Yet how could that question affect the validity of this mortgage ? The mortgage was given in February, 1858, and Foster's purchase was the next May. This could not make the mortgage good or bad. This mortgage could not be foreclosed against even Clow & Osborn. It had no validity against any body, till delivered. And it can not be said that a *fraud* can operate injuriously, against an instrument that has no validity.

III. The defendants, especially the scythe company, can not question the good faith of Foster's purchase. They took an assignment of two prior mortgages on these premises, and actually received from Foster the purchase money of the premises. Equity will not allow the Beardsley Scythe Company to take from Foster the purchase money of the premises, and then take away the premises from him.

IV. The Beardsley Scythe Company had no right to foreclose this mortgage while they had an action pending for the same demand claimed in the mortgage. (3 *R. S.* 859. *Abb. Dig.* 155.)

V. The mortgage purports to have been given as collateral security for a bond. The proofs show that no bond was ever given ; and hence no such *debt* or *demand* existed as the mortgage purports to be given for.

VI. The rulings and decisions of the court, on the trial, were all right, and the judgment should be affirmed.

*By the Court*, WELLES, J. The only question to be considered in this case is, whether the mortgage made by the defendants Osborn & Clow to the defendant Beardsley Scythe Company, bearing date January 25, 1858; was ever delivered, so as to become a lien upon the premises therein described, prior to the conveyance from the mortgagors to the plaintiff, executed and delivered May 11, 1858, and recorded May 14, of the same year, for the same premises described in the mortgage. The mortgage was recorded the next day after its date.

At the time it was acknowledged, the mortgage was left with French, the justice of the peace, before whom it was acknowledged, to take to Auburn, and leave it with the county clerk and pay the fees for recording. French accordingly left it with the county clerk, and paid his fees with money furnished him by Osborn. No directions were given, as to the ultimate disposition of the mortgage, after it should be recorded.

On the occasion of taking Osborn's acknowledgment, he stated to the justice, in substance, in answer to a question put by the latter, that the scythe company did not expect the mortgage, and that it was made to keep off other creditors. The scythe company had no notice or knowledge of its existence until a considerable time after the deed from Osborn & Clow to the plaintiff had been duly executed, delivered and recorded.

When the plaintiff took his deed to the county clerk's office to be recorded, he took the mortgage from the office, and has kept it ever since, and it was so taken by the direction of Osborn. It appears that the premises consisted of a small parcel of land upon which Clow & Osborn had carried on the business of making cradles, and that they had bought scythes for the cradles of the Beardsley Scythe Company, whose place of business was in West Winsted, in the state of Connecticut.

The plaintiff testified, in substance, that some eight or ten days, or two weeks before the consummation of the pur-

chase of the real estate, in a conversation with Osborn, the latter proposed to him to buy the real estate.  That he told him he had been looking for business, and would think of it. That Osborn told him he would sell the real estate for what he gave, $1200.  That he inquired of him if there were any incumbrances.  That Osborn replied the purchase money mortgages, one to Sittzer and one to the Robinson estate, amounting together to $800.  That he asked him if that was all, and he replied, yes.  That in the same conversation Osborn stated he had put a mortgage on record to a company in Connecticut, which the plaintiff testified afterwards turned out to be this same Beardsley Scythe Company ; and that at that time the plaintiff did not know any thing about that company. That Osborn did not inform him it was the Beardsley Scythe Company ; that he did not tell him to whom the mortgage was made, but that he made a mortgage and put it on record, but that it was of no account ; that the parties to whom it purported to have been given knew nothing of it, and that he never intended to have them know any thing about it.  That it was not intended to be a lien on the premises ; that he intended to take it off again, and had so intended when he put it on record.  That it was put on for a shadow or bugbear for certain other purposes, and to scare off other creditors, and that he would take it off again.  That the mortgage had not been delivered to the mortgagees.  When Osborn told him this, it broke off the negotiations.  After this, and before he closed the bargain, the plaintiff testified he went to Auburn and consulted counsel, after which he bought the property.

Clow & Osborn were both examined as witnesses, under commissions, for and at the instance of Beardsley Scythe Company, and their testimony conflicts in many respects with the evidence produced and given on the part of the plaintiff. Their testimony, to a considerable extent, is improbable and irreconcilable with uncontested material facts in the case. The evidence of Clow, under the commission, was taken at

Harrisburgh, in Pennsylvania, while he was a member of the Union army. He was afterwards, and before the trial, at home on furlough, when he was examined again *de bene esse*, before the county judge of Cayuga county, and on that examination his testimony differed essentially from that taken under the commission.

It is scarcely pretended by either of these witnesses that the mortgage in question was ever delivered to the scythe company or to any one for them, or for their use, while the evidence is strong and, to my mind, convincing that it was never so delivered, at least not until months after the deed of the premises from Clow & Osborn to the plaintiff was executed, delivered, and recorded. Indeed the evidence, I think, fails to prove that the scythe company have ever accepted it, even to this day. The only evidence tending in any degree to prove such acceptance by the company is that showing that Mr. King, one of the attorneys for the defendants, gave notice, long after the plaintiff's deed was recorded, that the company had accepted it. That notice was no evidence of an acceptance. It does not appear that Mr. King had authority from the company to accept it. On the 7th day of June, 1858, Osborn & Clow delivered to the plaintiff a written statement, signed by them both, to the effect that the mortgage was made and executed by them entirely voluntarily, and without the knowledge, privity or consent of the said scythe company, or any one in their behalf, and that said mortgage was never delivered to them, or any one for them ; and that said company had never been informed that the same was so given, and have never had possession of the same ; that the same was not a *bona fide* lien upon said premises, but was made and recorded by them, the said Osborn & Clow, for the express purpose, and for that only, of keeping off other claims or creditors from collecting debts of them. Osborn & Clow endeavor, in their testimony taken under the commissions, to neutralize and impair the effect of this statement, by an attempt to show that it was improperly obtained

from them; but I am constrained to conclude that the attempt was an entire failure. The statement, so far as it goes, is in accordance with, or corroborated by, the leading facts about which there is little or no controversy, or which are established by other satisfactory evidence; and Clow, in his testimony before the county judge of Cayuga county, states that the facts contained in the written statement were true.

Upon the whole, I am satisfied, after a careful examination of the whole case and all the evidence, that there was no delivery of the mortgage by the mortgagors to the mortgagees or any other person for them.

The delivery to the county clerk was for the purpose of having it recorded, and for nothing more. The mortgagors did not intend it as a delivery for the scythe company, but for quite a different purpose, as the evidence abundantly shows. There can be no delivery without an acceptance, and at the time the mortgage was delivered to the county clerk the scythe company had no knowledge of it, and did not expect it. They were not in reality parties to it, and there was therefore no party to accept it. It is necessary to the validity of a deed that there should be a grantee willing to accept it. I admit that a delivery of a deed or mortgage to the county clerk for the use of the grantee or mortgagee, to be recorded, and the subsequent assent to the same by the person to whose use it is intended, is equivalent to an actual delivery to the grantee, and will prevail against a subsequent deed made *after such assent*. But if after such delivery to the clerk, in such a case, and before such assent, the grantor conveys the mortgaged premises to a third party, who receives the conveyance in good faith, I deny that the first deed or mortgage will prevail, as against the latter conveyance.

It is urged, however, on the part of the defendants, the scythe company, that the plaintiff's purchase of the real estate was not made in good faith, but, on the contrary, was done to aid Clow & Osborn to hinder, delay and defraud the

creditors of the latter. This, I think, the evidence fails to establish. The case shows that after the plaintiff made the purchase, and after the execution and delivery of the deed to him, he purchased personal property of the defendant Osborn, which had belonged to the firm of Osborn & Clow, who had been partners in the business of manufacturing cradles, and Clow had assigned his interest in the personal property to Osborn. This purchase of the personal property by the plaintiff was a transaction entirely distinct from the purchase of the real estate. All the evidence claimed as tending to show fraud on the part of the plaintiff was in relation to the purchase of the personal property, and comes from the witnesses Clow and Osborn, and consists of conversations they allege they had with the plaintiff, which is flatly denied by the plaintiff. In alleging any such fraud committed between themselves and the plaintiff, they seriously impair their credibility by proclaiming their own turpitude; and the nature of their evidence is such, being conversations when no disinterested person was present, that it is impossible for the plaintiff to do more than contradict it.

The consideration which the plaintiff was to pay for the real estate was $1200. That is shown to have been its full value. At the time he received the deed the premises were incumbered to the amount of $800, which he assumed, and has since paid, as a part of the consideration of the conveyance. The balance of the purchase price he has paid to Clow & Osborn.

The evidence of the statements made by Clow & Osborn to the plaintiff, during the negotiations for the purchase of the real estate, was properly received for the purpose of repelling the legal inference which might be claimed from the fact that he was chargeable with notice of the mortgage from the time it was recorded, and to show that while he had notice that Clow & Osborn had put a mortgage on record, without stating who was the mortgagee, he at the same time, and from the same source, had notice of facts which would at

least show that it had not been delivered and was never intended to be delivered, and would therefore be no impediment to his purchasing the premises.

From the foregoing facts and circumstances, with others which appear in the case, I am led to concur with the justice before whom the action was tried, in all his findings of fact and law, and particularly that the mortgage in question is void as a lien prior to the deed to the plaintiff, for the premises in question, for want of delivery.

I have examined the various exceptions taken by the defendants in the progress of the trial, as well as the several requests by the defendants' counsel that the court should find certain other facts, and am unable to discover any error in the decisions of the court relating to such exceptions or refusals.

I am therefore of the opinion that the judgment of the special term should be affirmed, with costs.

Ordered accordingly.

[MONROE GENERAL TERM, March 4, 1867. *Welles, E. D. Smith* and *Johnson,* Justices.]