SAMUEL C. BROOKS, APPELLANT, *v.* MICHAEL K. WILSON, ELIZABETH A. MUNOZ, INDIVIDUALLY AND AS ADMINISTRATRIX, ETC., AND OTHERS, RESPONDENTS.

*Fraudulent conveyance — mortgage given by the fraudulent grantee to secure a valid debt of his grantor, valid — a judgment good against the debtor is conclusive against his creditors — priority of rights of judgment-creditors in property fraudulently disposed of by the debtor — declarations, as evidence.*

Where an insolvent debtor, with intent to hinder, delay and defraud his creditors, has conveyed his property, and the fraudulent grantee, at his request, for the purpose of securing a valid indebtedness of the insolvent debtor to a third person, executes a mortgage upon such property to such third person, such mortgage constitutes a just appropriation of the property of the insolvent debtor to the payment of his debt, and the mortgagee becomes, in judgment of law, a *bona fide* purchaser.

A judgment obtained without fraud or collusion, and which concludes the debtor, whether rendered upon default, confession or after contest, is, upon all questions affecting title to the debtor's property, conclusive evidence against his creditors to establish, first, the relation of creditor and debtor, between the parties to the record, and, second, the amount of the indebtedness.

*Munoz* v. *Wilson* (111 N. Y., 295) followed.

There is no rule which requires a creditor, in order to establish his claim, to make all other creditors of the common debtor parties to an action brought for its recovery.

Where property has been fraudulently transferred by an insolvent debtor with intent to defraud his creditors, and judgment-creditors of the debtor bring successive actions to set aside the fraudulent conveyance, they will acquire priority of right in the property so fraudulently transferred; not in the order of the date of the docketing of their respective judgments, but in that of the commencement of the actions for their enforcement against the property fraudulently conveyed.

Effect cannot be given to the statute avoiding fraudulent conveyances, unless the creditor obtains an adjudication establishing the fraud and compelling the application of the property fraudulently conveyed to the payment of his debt.

A creditor may cause the property to be sold on execution, but he cannot recover possession from the fraudulent grantee, or from any one claiming under him, except by means of a judgment establishing the fraud; the fraudulent conveyance being effectual between the parties to it, the mere right to have the conveyance annulled does not, *per se*, avoid it or make the property that "which the judgment-debtor has" in any sense.

*Miller* v. *Sherry* (2 Wall., 249) followed.

Under the most favorable circumstances, the declarations of a party to a transaction, made without any apparent motive or object, to a stranger, who has no interest in or relation to the matter, are regarded by the courts with distrust, and as being the lowest and most unreliable species of evidence.

Appeal by the plaintiff from a judgment rendered at a Special Term of the Supreme Court held in and for the county of Kings and entered in the office of the clerk of that county on the 29th day of March, 1889, dismissing the plaintiff's complaint and dissolving the preliminary injunctions theretofore granted in the above-entitled action.

The action was brought to have certain conveyances made by Michael K. Wilson to George Wilson declared to have been made with the intent to hinder, delay and defraud the creditors of said Michael K. Wilson and to be fraudulent and void; that the plaintiff be adjudged to be entitled to the payment to him of the amount of a certain judgment recovered against the said Michael K. Wilson out of the proceeds arising from the sale of said real estate upon the foreclosure of certain mortgages which were upon said premises at the time of said conveyance, which proceeds of sale had been deposited with the county treasurer of Kings county, and that such judgment, until paid, be declared to be a lien upon said proceeds of sale, and that the defendants, and each of them, be enjoined from taking any proceedings to obtain the payment of any of such surplus moneys from the county treasurer until the payment of the amount due to the plaintiff upon said judgment.

The court found that Michael K. Wilson, the debtor, conveyed the premises in question to George Wilson, his nephew, with intent to hinder and defraud the creditors of the former. That the said George Wilson executed and delivered to Elizabeth Jane Clay a mortgage upon the premises to secure an indebtedness owing by the said Michael K. Wilson to said Elizabeth Jane Clay. And, as conclusion of law, that such mortgage was superior to any lien or charge existing under and by virtue of the judgment against said Michael K. Wilson sought to be enforced by the plaintiff against said proceeds of sale.

*A. W. Gleason*, for the appellant.

*William T. Gilbert*, for the respondent Munoz.

Pratt, J.:

We are unable to discover any error in the disposition of this case at Special Term. The findings of fact are amply sustained

by the evidence, irrespective of the judgment record put in evidence by the defendant. It is not disputed that the conveyance from Michael K. Wilson to his nephew George Wilson, and that from said George to Eliza A., wife of said Michael K., were made with intent to hinder, delay and defraud the creditors of said Michael K., or that the mortgage held by the respondent, Mrs. Munoz, was made by said George at the request of said Michael K. for the ostensible purpose of providing for the payment of the indebtedness of Michael K. to the mortgagee, which the mortgagee thereby assumed and covenanted to pay. The mortgage recites such indebtedness and contains an express covenant to pay the same. The legal effect of such a transaction is not open to discussion. The mortgage having been made by the fraudulent grantee at the request of the fraudulent grantor, for the purpose of securing the indebtedness of the latter to the mortgagee, it was a just appropriation of the property of such grantor to the payment of his debt, and the mortgagee became, in judgment of law, a *bona fide* purchaser. The right of creditors to have the fraudulent conveyance of Michael K. set aside, to the predjudice of the mortgagee, was cut off, and the mortgagee is entitled to the same measure of protection as would have been afforded if the mortgage had been made by the fraudulent grantor before he made his fraudulent conveyance. (*Seymour* v. *Wilson*, 19 N. Y, 421; *Murphy* v. *Briggs*, 89 id., 446; *Munoz* v. *Wilson*, 111 id., 295; *Ledyard* v. *Butler*, 9 Paige, 132; *Davis* v. *Graves*, 29 Barb., 480; Pom. Eq. Jur., § 777, and cases cited.)

It is urged that the mortgage was never, in fact, delivered. This question was fully considered on the appeals from the judgment for the foreclosure of the mortgage in question. (*Munoz* v. *Wilson*, 111 N. Y., 295.) It was held in that case by this court, and by the Court of Appeals upon substantially the same facts as are presented on this appeal, that the mortgage was duly and effectually delivered; that the acts which constituted the delivery having been done for the benefit of the mortgagee and being beneficial to her, her assent thereto must be presumed, and that her administratrix, the respondent Mrs. Munoz, might, if necessary, ratify and affirm such acts, there being no intervening rights of creditors entitled to protection against the effect of such ratification. No right of the plaintiff intervened

to prevent the respondent Munoz from exercising her right to ratify the making and delivery of the mortgage. The acts which constitute the delivery were completed, and the mortgage was recorded, upon well settled principles, therefore the mortgage would have priority even if it appeared that the act of ratification occurred after the recovery of the judgment. A judgment being a general lien is subject to every equity which existed againt the real property of the judgment-debtor, where the judgment was docketed. (*In re Howe*, 1 Paige 125 ; *Arnold* v. *Patrick*, 6 id., 310 ; *Chase* v. *Peck*, 21 N. Y., 581 ; *Cook* v. *Kraft*, 60 Barb., 409 ; Wharton's Maxims, 67.)

The case of *Foster* v. *Beardsley Scythe Company* (47 Barb., 505), cited by the appellant, is not in conflict with these cases. The court there held merely that a deed executed but not delivered, until after another conveyance had been made and actually delivered to a *bona fide* purchaser, could not be made effectual so as to give it priority over the deed first delivered by reason of the grantee having ratified the inchoate acts which were held insufficient to constitute a delivery. Upon this question of the delivery of the mortgage the case of *Munoz* v. *Wilson* (*supra*) is decisive, and renders further discussion of the subject superfluous. (*Messelbach* v. *Norman*, 46 Hun, 414.)

It is also insisted that the mortgage is devoid of consideration. The case of the plaintiff, on this point, rests upon the testimony of Michael K. and George Wilson and one Litchault. We are of opinion that the testimony of the Wilsons should have been disregarded, for the reason that they were excluded by section 829 of the Code of Civil Procedure as witnesses to any personal transactions with the deceased mortgagee. They were parties to the action and interested in the event thereof — George to annihilate the covenant to pay the mortgage and Michael K. to obtain the surplus, and thus to discharge the plaintiff's judgment against him. (*Redfield* v. *Redfield*, 110 N. Y., 671 ; *Miller* v. *Montgomery*, 78 id., 282 ; *Holcomb* v. *Holcomb*, 95 id., 324 ; *Smith* v. *Cross*, 90 id., 549 ; *Pope* v. *Allen*, id., 298.) The suggestion that their interest was balanced is unfounded. If Michael's indebtedness to the mortgagee was not paid by the mortgage, it is barred by the statute of limitations. George is indebted solely upon the mortgage. The plaintiff's

judgment is not against him, nor is the mortgage against Michael. In *Wilson* v. *Munoz* the above facts were not shown. The case, therefore, is inapplicable. The credibility of the Wilsons, too, was impeached by the fact that they participated in a scheme to cheat certain creditors. Their testimony was given for the purpose of invalidating the claim of another creditor. They were interested. Their manner and appearance on the stand may also have impeached their credibility. We are of opinion that the trial court would have been justified in rejecting their testimony altogether. With respect to the testimony of Litchault, the trial court was warranted in attaching little weight to his statements so far as those statements represented Mrs. Clay's declarations to him as referring to pecuniary transactions between her and Michael K. Wilson, they are exposed to grave suspicion. He did not at first so characterize them. It was only after the plaintiff's counsel had put the word "money" into his question that any reference by Mrs. Clay to money or business appeared. His subsequent addition of the statement that Mrs. Clay told him that she held mortgages of Michael K. Wilson, and then again that she held the particular mortgage in question, specifying the amount of it, for safe-keeping, and his statement of the amount of her personal property, justly arouse suspicion as to the truth of his story. It may not be improbable that Mrs. Clay had used language in conversations with this witness expressive of obligations to Mr. Wilson for acts of personal kindness to her, but the relations which the witness testified existed between Mrs. Clay and himself preclude a belief that she made him her confidant in respect to her business affairs. Some of Mrs. Clay's declarations, according to his testimony, were made five or six years before the mortgage in question was executed. The date of the others was left in uncertainty. There does not appear to have been any reason or motive for the making of any of them. Observation of the examination of the witness, and his manner of testifying, also formed proper elements of judgment as to the degree of credibility to be given to his testimony. Under the most favorable circumstances, loose declarations of a party to a transaction, made without any apparent motive or object to a stranger who has no interest in or relation to the matter, have been uniformly regarded by courts with

distrust, and as being, at best, the lowest and most unreliable species of evidence. In the case before us the conversations which the witness related occurred, if they ever occurred, more than ten years before the trial, for Mrs. Clay had been dead during that period. Those conversations are wholly inconsistent with the written evidence, with the conduct and statements of Michael K. Wilson in his overtures to Mrs. Munoz to obtain a satisfaction-piece of the mortgage, and with his declarations to the witness Kimball. It is taxing the credulity of an appellate court too much to ask that full evidence be given to such testimony.

Upon a consideration of all the oral evidence in the case, therefore, we are of opinion that the findings of fact and the judgment are amply warranted by that evidence alone.

The judgment in the case of *Munoz* v. *Wilson* (*supra*), is conclusive upon all the questions here involved affecting the validity of the mortgage in controversy. That principle was declared in *Candee* v. *Lord* (2 N. Y., 269), where the Court of Appeals unanimously held that "a judgment obtained without fraud or collusion, and which concludes the debtor, whether rendered upon default, confession or after contestation, is, upon all questions affecting the title to his property, conclusive evidence against his creditors to establish, first, the relation of creditor and debtor between the parties to the record ; and, second, the amount of the indebtedness." This case has been followed in numerous instances and under a great variety of circumstances, and has never, to my knowledge, been questioned. (*Hall* v. *Stryker*, 27 N. Y., 596 ; *Burgess* v. *Simonson*, 45 id., 225 ; *Pray* v. *Hegeman*, 98 id., 351 ; *Carpenter* v. *Osborn*, 102 id., 552 ; *Decker* v. *Decker*, 108 id., 128 ; *Stout* v. *Lye*, 103 U. S., 66.)

The rule thus established is founded in manifest reason and necessity, and, on grounds of public policy, ought to be firmly upheld. It has not been suggested, nor does the case afford any basis for the suggestion, that any fraud or collusion was practiced in procuring that judgment. Nor does the principle asserted conflict with the rule that parties and privies only are bound by a judgment, for creditors can claim the property of their debtor only through him. They are, therefore, in privity of estate with him whenever his property is subjected to the payment of their debts.

A rule that would require a creditor to make all the other creditors of the common debtor parties to an action to recover the debt would be palpably unjust, for compliance with it would be utterly impracticable. The judgment in *Munoz* v. *Wilson* has a two-fold operation; first, to establish the validity of the mortgage, and, second, to bar the parties to the action and subsequent grantees and incumbrancers from all claims upon or interest in the land. The plaintiff's judgment is junior to the mortgage held by Mrs. Munoz. The validity of and the amounts due upon that mortgage having been established by the judgment in *Munoz* v. *Wilson*, and the surplus which arose upon the sale of the mortgaged premises on the foreclosure of prior mortgages being insufficient to satisfy the mortgage held by Mrs. Munoz, it is, perhaps, immaterial to inquire whether that judgment was a bar to the claim of the plaintiff to a lien on the mortgaged premises by virtue of his judgment. If the docketing of that judgment made it a lien on the mortgaged premises, is is clear that he was not barred by the judgment in *Munoz* v. *Wilson*, because the action in which that judgment was obtained was not commenced until after the plaintiff's judgment was docketed, and the plaintiff's assignor was not a party thereto. That fact, however, does not impair the effect of the judgment obtained by Munoz, according to the rule in *Candee* v. *Lord* (*supra*). We are of opinion that no lien on the mortgaged premises or upon the surplus by virtue of the plaintiff's judgment was acquired until this action was commenced. The lien of a judgment is given by statute only. It does not exist in cases not provided for by the statute creating it. (*Buchan* v. *Sumner*, 2 Barb. Ch., 165.) This case is governed by section 1251 of the Code of Civil Procedure, which gives a lien on the "*real property which the judgment-debtor has.*" With what propriety can it be said that a judgment debtor "*has*" property which he has conveyed away? It is claimed that the statute which avoids conveyances made with intent to defraud creditors, rendered the conveyance of Michael K. Wilson, a judgment-debtor, a nullity as respects his creditors; and, therefore, that judgments against him become liens on the property conveyed, as if no conveyance had been made. The answer to this argument is that the fraudulent conveyance is not *void*, but is *voidable* only, at the election of creditors defrauded. (*Anderson* v. *Roberts*, 18 Johns,

516; *Harvey* v. *Varney*, 98 Mass., 120; Waite's Fraud. Conv., §§ 395–445.)

The fraudulent grantee can transfer the title to the property conveyed, to a *bona fide* purchaser, notwithstanding outstanding judgments against the fraudulent grantor, docketed before the transfer, and creditors in successful actions to set aside the fraudulent conveyance have priority, not in the order of the date of the docketing of their respective judgments, but in that of the commencement of the actions. These well-established rules are inconsistent with the argument referred to, as between the fraudulent grantor and fraudulent grantee the conveyance is perfectly valid and effectual. Effect cannot be given to the statute avoiding fraudulent conveyances, unless the creditor defrauded obtains an adjudication establishing the fraud, and compelling an application of the property fraudulently conveyed to the payment of his debt. He may, it is true, cause the property to be sold on execution, but he cannot recover possession from the fraudulent grantee, or from anyone claiming under him, except by means of a judgment establishing the fraud. The creditor defrauded has a right of election to bring an action to have the fraudulent conveyance annulled, or to abstain from a contest respecting its validity, and so, by implication, to affirm its validity. But, if he should elect to bring an action to have the conveyance annulled, a judgment in his favor would not reinvest the fraudulent grantor with the title to the property fraudulently conveyed, but would merely divest the fraudulent grantee of his title to so much of the property as should be sufficient to satisfy the judgment against the fraudulent grantor. The fraudulent conveyance, being effectual between the parties to it, the right to have the conveyance annulled does not, *per se*, avoid it, or make the property that " *which the judgment-debtor has*," in any sense, popular or legal.

I can find no decision in this State directly on this point. There are cases in which judgments against fraudulent grantors, recovered after conveyances by them, are mentioned incidentally as liens, but in all the cases that have come under my observation, such expressions were used only to denote priority of equitable rights. None of them can be treated as expressions of opinion, much less as adjudications of the question here discussed. The Supreme Court

of the United States, however, has decided the precise point.   In *Miller* v. *Sherry* (2 Wall., 249), which involved the question under consideration, the court said : " The judgment obtained by Mills & Bliss was the elder one, but it was subsequent to the conveyance from Miller (the debtor and fraudulent grantor) to Williams.   It is not contended that the judgment was a lien on the premises.   The legal title having passed from the judgment-debtor before its rendition, by a deed valid as between him and his grantee, it could not have that effect by operation of law."   We concur in that decision.

The foregoing remarks, if correct, dispose of all of the plaintiff's exceptions.

The judgment is affirmed, with costs.

BARNARD, P. J., and DYKMAN, J., concurred.

Judgment affirmed, with costs.