JANE ROBERTSON, Appellant, *v.* GEORGE A. LAWTON and ROSWELL I. LAWTON, Defendants; MARCENA M. TERRY, Respondent.

*Execution — when it becomes dormant — an execution delivered but not levied prior to a levy under a subsequent attachment — when the latter takes precedence.*

In an action brought to determine the priority of liens upon a fund in the hands of a sheriff, it appeared that the defendants made a general assignment for the benefit of creditors, with preferences, on the 24th day of July, 1894; that shortly afterwards several judgment creditors commenced actions to have the assignment set aside as fraudulent; that on the 21st day of September, 1894, the plaintiff obtained judgment against the defendants, and upon the same day issued an execution; that the plaintiff's attorney gave the sheriff no special directions at the time, but told him that the defendants had made a general assignment, and that he was about to bring an action to have it set aside. It further appeared that on the 24th day of September, 1894, Marcena M. Terry seized all the property of the defendants under an attachment; that on the 3d day of October, 1894, under orders made in the actions brought to set aside the assignment, the sheriff sold all the property thus seized. In the following May the assignment was set aside, a certain judgment was ordered paid, after satisfying which a fund remained in the hands of the sheriff. It was held at Special Term that the plaintiff's execution was not delivered to the sheriff for the purpose of being actually levied.

*Held,* that, as between the plaintiff and the attaching creditor Terry, the execution of the plaintiff had become dormant for a failure to levy before the seizure by Terry of the judgment debtors' property under the attachment, and that Terry had acquired a precedence by levying under the attachment promptly, taking the hazard of a doubtful situation.

APPEAL by the plaintiff from an order of the Supreme Court, made at the Schenectady Special Term and entered in the office of the clerk of the county of Warren on the 2d day of August, 1895, adjudging that the execution issued on the judgment entered in the action on the 21st day of September, 1894, was not a lien upon a certain fund in the hands of the late sheriff of Warren county superior to the lien of an attachment and execution issued in an action brought by one Marcena M. Terry against said defendants, and directing the distribution of such fund by said sheriff.

*Lyman Jenkins,* for the appellant.

*Charles R. Patterson* and *Louis M. Brown,* for the respondent, Marcena M. Terry.

MAYHAM, P. J. :

This was a motion to set aside a judgment in favor of the plaintiff against the above-named defendants, entered on the 21st day of September, 1894, and the execution issued thereon on the same day, which was placed in the hands of the deputy sheriff of Warren county at eight o'clock in the forenoon of that day, mainly on the ground that the same was not executed by a levy on the property of the judgment debtors before the twenty-fourth day of the same month, on which last-mentioned day one Marcena M. Terry seized all the property of the judgment debtors liable to be taken on execution, under and by virtue of an attachment issued in his favor in an action brought by him against the defendants herein. Said Terry claimed on this motion that the execution issued on the judgment in favor of the plaintiff, as to his attachment, had become dormant before the property of the defendants was seized on such attachment.

The affidavits used on this motion disclose that on the 24th day of July, 1894, the defendants herein made a general assignment, with preferences to one Ezra Hartman, for the benefit of creditors, and thát shortly thereafter several judgment creditors commenced actions to set aside the assignment as fraudulent as against the creditors of

the assignors, and that during the pendency of such actions orders were obtained by creditors of said defendants, by the terms of which the sheriff of Warren county was directed to sell at public auction the property assigned to Hartman, but which had been seized by the sheriff under the attachment above referred to, and that the sheriff did, on the 3d day of October , 1894, sell the goods so seized for $3,410.

On the 3d day of May, 1895, Messrs. Bussey & McLeod, judgment creditors of the defendants, recovered a judgment declaring said assignment made by defendants to Hartman void as against the creditors of the defendants; that after satisfying the judgment of Bussey & McLeod there remained in the hands of the sheriff the sum of $873.36, the proceeds of the sale of the property of the defendants made by the sheriff under the orders above referred to. And the question here is, whether that money shall be applied on the execution issued on the plaintiff's judgment, or on the execution issued on the attachment in favor of Terry.

No directions except those contained in the execution appear to have been given by the plaintiff or his attorney to the deputy sheriff at the time of the delivery of the execution to him, or at any time thereafter. But the deputy sheriff was informed by the plaintiff's attorney that the defendants had made a general assignment, and that their property was in the hands of the assignee, and that he was about to commence an action to have the assignment declared fraudulent and void.

No indemnity appears to have been demanded by the deputy sheriff as a protection to him for the seizure of the assigned property, nor was any bond of indemnity offered to him by the plaintiff.

Upon these facts the learned judge at Special Term held that the plaintiff's execution, as between him and the execution issued on the judgment rendered in the action in which the attachment proceedings were had, was dormant, and that the execution issued on the judgment rendered in the attachment case had precedence by virtue of a levy under the attachment over that of the execution issued on the plaintiff's judgment, and bases that decision apparently upon the idea which he gathers from the affidavits that the execucution on the plaintiff's judgment was not delivered to the proper officer (to be executed).

It is true that the Code of Civil Procedure (§ 1405) declares that the goods and chattels of a judgment debtor, not exempt from execution, are bound by the execution from the time of the delivery thereof to the proper officer to be executed; but the Special Term having found that it was not delivered to the deputy sheriff to be executed; that, as against the process delivered subsequently to the same officer to be executed, the latter acquired precedence, by reason of the hazard taken in executing the doubtful process in a doubtful case, as against the less courageous and vigilant creditor, who failed to make an actual levy.

We are inclined, assuming the facts to be as the learned judge at Special Term found them, to hold his conclusion of law sound.

We are, therefore, of the opinion that the order should be affirmed on the opinion of the Special Term judge.

HERRICK, J., concurred; PUTNAM, J., concurred in result.

Order affirmed, with costs and disbursements.

The Special Term opinion was as follows:

LANDON, J.:

Upon the evidence, it is clear that the money in the hands of the sheriff now awaiting distribution has been secured to Mr. Patterson's client in consequence of his diligence and the risks which he incurred.

Mr. Jenkins' client incurred no risks. In *Cudahy* v. *Rhinehart* (133 N. Y. 253) ANDREWS, J., lays down the rule that, as between attaching creditors, those who fight the battle and incur the risks take precedence over the laggards who first display their vigor upon the distribution of the fruits of the victory, although the attachments of such laggards may be prior in point of time. So sound a principle of equity must govern here, unless the law forbids.

Mr. Jenkins placed his client's execution in the hands of the deputy sheriff September 21, 1894. The deputy made no levy. September twenty-fourth Mr. Patterson placed the attachment of his client in the hands of the sheriff, not the deputy, and procured him to levy upon the assigned property and take it into his custody. The assignee had advertised the property for sale for the same day. But for this seizure by the sheriff, at the instance of Mr. Patterson's

client, the property would doubtless have passed into the hands of innocent purchasers. The risk of this action was incurred by Mr. Patterson's client and not by Mr. Jenkins'. The property was seized while the execution of Mr. Jenkins' client was in the hands of the deputy sheriff, and the sheriff who made the seizure had no notice of the existence of such execution.

By the mere delivery of the execution to the deputy sheriff without actual levy, Mr. Jenkins' client secured no lien upon the assigned property, as against the subsequent actual levy under Mr. Patterson's client's attachment.

The Code of Civil Procedure (§ 1405) declares that the goods and chattels of a judgment debtor not exempt, etc., are bound by the execution from the time of the delivery thereof to the proper officer, *to be executed.* But, as between the judgment debtors and their assignee, these goods were not the judgment debtors', but their assignee's goods. (*Brooks* v. *Wilson,* 53 Hun, 173.)

The deputy sheriff was not obliged to levy upon them without indemnity (*Chamberlain* v. *Beller,* 18 N. Y. 115; *Mumper* v. *Rushmore,* 14 Hun, 591; affd., 79 N. Y. 19), much less without request, and Mr. Jenkins made none.

Mr. Jenkins, in his affidavit, states that the deputy asked him, " if the defendants had any property subject to levy; that deponent said there was property, but that defendants had assigned to Hartman and he had possession, but deponent believed the assignment void, and that deponent had the papers in a judgment creditor's action to set aside said assignment and in aid of said executions nearly prepared and should bring said action at once."

It was subsequently shown that the assignment to Hartman was void; but fraud is not presumed; it must be proved, and, until proof is made, the presumption is in favor of the assignee's title.

Moreover, the assignment was only voidable, and Mr. Jenkins' client did not elect to incur any risk in procuring it to be declared void. After the sheriff had seized the property, Mr. Jenkins proceeded without risk with a suit to have the assessment declared void. He used, without any contest, the minutes of the evidence which Mr. Patterson had adduced upon the trial of a contested suit at a previous term of the court in the actions brought by his client for the like purpose.

THIRD DEPARTMENT, DECEMBER TERM, 1895.          [Vol. 91.

Since the deputy sheriff was not bound to execute Mr. Jenkins' client's execution, and was not requested to do so as to the assigned property, and there was no other, and did not execute it, it is fair to conclude that it was not delivered to him to be executed, except contingently, and was in effect dormant when Mr. Patterson's client's attachment was executed. That being so, Mr. Jenkins' client fell behind in the race of diligence and remains so.

It is true that Mr. Jenkins commenced an action in behalf of one of his clients in aid of his execution September 24, 1894, but after the levy of Mr. Patterson's attachment.

Now, it has been held in certain cases that an execution creditor may commence an action in aid of his execution without first making an actual levy. (*Stewart* v. *Beale*, 7 Hun, 405.) In real estate cases, no levy is necessary, since the judgment binds the real estate without levy. Where no levy can be made on the personal property (as in *Stewart* v. *Beale*), equity will dispense with it or remove the obstacle so as to permit it to be made.

Here Mr. Jenkins' client proceeded to judgment, valid, of course, as between the parties to it, but not affecting the prior rights secured by Mr. Patterson's clients. Apart from the judgment thus secured, Mr. Jenkins' clients would have no right to have the assigned property sold without first making the levy, and having elected not to make the levy until they obtained their judgment, they thus elected to treat the assigned property as belonging to the assignee until they should prove it did not, and thus stood out of the way of Mr. Patterson's clients, who at the outset seized the property as the judgment debtors'.

In respect to chattels alleged to have been fraudulently assigned, as between different attachment or execution creditors, it is obvious that each one should by his acts define his position. In respect to real estate fraudulently assigned, an execution, and a suit in aid of it and notice of *lis pendens* would give notice to all the world, and since the real estate is immovable, no seizure or injunction is necessary to preserve the subject-matter of the litigation. But chattels are movable, and, unless timely seized, may be taken from the jurisdiction or be lost. An execution against their former owner is no notice of any claim to the chattels against the alleged title of his assignee, and, without more, in no way binds them. A suit in aid

of the execution, where there is no levy or attempt to make one, or other seizure of the chattels, is a mere 'declaration that the judgment creditor will take the chattels, if the court will permit him, and the assignee will be good enough to keep them on hand. This may be enough between the parties to the suit, but it is clear that it is not enough to obtain priority over the vigilant creditor who levies upon and takes and holds the chattels and by his action in equity first establishes the debtor's title to them.

In such case, the priority of actual levy determines the priority of right in distribution. (*Beck* v. *Burdett*, 1 Paige, 308.)

Mr. Patterson's client may take an order giving him priority, with costs.

I do not think the judgment of Mr. Jenkins' client should be set aside. He took the risk of finding an appearance by mail after he made his affidavit of default, but his affidavit was true when he made it, and was not rendered untrue at any subsequent event. The practice is not commendable, but as the event confirms the affidavit and is regular in form, the judgment must stand.

The other defects in the judgment roll are amendable.