(36 Misc. Rep. 351.)

### WILCOX v. DROUGHT et al.

(Supreme Court, Special Term, New York County. November, 1901.)

1. MORTGAGES — FORECLOSURE — SURPLUS-MONEY PROCEEDINGS — REFEREE — POWERS.

A referee appointed in proceedings for the distribution of surplus money after mortgage foreclosure has power to hear and determine all questions of law and fact, such as usury, fraud, etc., tending to show the equities of the claimants, to the end that the merits of those claiming the moneys may be finally determined.

2. SAME—MORTGAGES OF EVEN DATE—RECORD—PRIORITY—DELIVERY—ACCEPTANCE.

Where two mortgages were executed on the same day to different creditors, and the mortgagor delivered one to the mortgagee personally, and sent the other for record, and both mortgages were recorded on the same day, one minute apart, but the mortgage sent for record was not delivered or accepted by the mortgagee until 11 days later, the mortgage first delivered was entitled to priority, though last recorded.

3. SAME—BONA FIDE PURCHASER—ANTECEDENT DEBT.

Where two mortgagees stand on an equality, within the recording act,— their mortgages being recorded on the same day,—the mortgagee whose mortgage is given for a present consideration is entitled to a priority in the distribution of surplus funds arising on foreclosure of another lien against the mortgaged property, over a mortgagee whose mortgage secures an antecedent debt of the mortgagor.

Action by Harriet H. Wilcox against Julia Drought and another to apportion surplus moneys arising under foreclosure. Motion to confirm referee's report. Modified and confirmed.

Mark G. Holstein, for O'Neill, claimant.
Alexander & Ash, for Simons & Moersfelder.
Geo. A. C. Barnett, for Lackey.
Edward M. Bliven, for Reukauff.
Venino & Sichel, for Drought.
Max Altmayer, for Cusick & Ryan.
Isaac Metzger, for Metzger.
Foster, Eustis & Coleman, for plaintiff.

McADAM, J.   Concerning the nature and extent of the powers of a referee in surplus-money proceedings, the court, in Tator v. Adams, 20 Hun, 132, says:

"Although there had previously been some doubt as to the powers of referees in proceedings to distribute surplus moneys, the decision in Berger v.

Snedeker, 21 Alb. Law J. 54, has settled the matter. It is held, and wisely held, in that case, that a question of fraud may be investigated before the referee; and it follows, by analogy, that every question may be examined tending to show the equities of the claimants."

The court therefore held that the referee had authority in such a proceeding to determine that a provision contained in a mortgage was inserted by mistake, the court remarking:

"In the present case there is no doubt that the clause in question was inserted by accident and mistake. In an action for the purpose the mortgage would be reformed. There is no need of such an action to determine the rights to these surplus moneys. They can be determined as well in the present proceeding."

A judgment creditor may contest and try the validity of a conveyance from a mortgagor to his wife upon a reference to determine as to the distribution of surplus moneys. Rogers v. Ivers, 23 Hun, 424. So the referee may inquire into and determine all questions of law and fact, usury, fraud, or the like, and every question tending to show the equities of the claimant, to the end that it may be decided in such proceedings finally, and on the merits, to whom such surplus moneys belong. McRoberts v. Pooley, 12 Civ. Proc. R. 139; Insurance Co. v. Bowers, 47 Barb. 618; Baker v. Baker, 70 Hun, 95, 23 N. Y. Supp. 1083; Kingsland v. Chetwood, 39 Hun, 602; Schafer v. Reilly, 50 N. Y. 61; Fliess v. Buckley, 90 N. Y. 286; Halsted v. Halsted, 55 N. Y. 442; Bergen v. Carman, 79 N. Y. 146; Bowen v. Kaughran, 1 N. Y. St. Rep. 121; Crombie v. Rosenstock, 19 Abb. N. C. 316. In Hulbert v. McKay, 8 Paige, 651, it was held that an incumbrancer or lienor who has neglected to file notice of his claim upon the surplus moneys may appear before the referee pending reference as to such surplus and file his claim in proper manner. He will then be entitled to be heard on the reference as to the validity of his claim upon such equitable terms as the referee may direct.

Although the learned referee, in adjusting the disputes of the various claimants, seems to have had these rules in mind, it is apparent that as between the claimants Lackey and Reukauff the rules were not fully complied with. Lackey's claim to the surplus was based on an assignment of a bond and mortgage to him by Reukauff under circumstances showing that the assignment was made solely for the convenience of the assignor and the business concern represented by him, and without any consideration whatever given by the assignee. Lackey claimed, however, that subsequent to the assignment he and Reukauff agreed that the assignee should hold the assignment in consideration of an indebtedness from the assignor, or the business concern represented by him, on the date of the agreement, for rent, work, labor, and services, and in further consideration of Lackey's assumption, at the request of Reukauff, of the liability of a surety on a bond given by Reukauff to discharge an attachment. The amount of Lackey's liability as surety was $300, and the liability on the other items amounted to $94.50, which sums, together with $35 thereafter loaned to Reukauff, amount to $429. The amount due on the bond and mortgage was $947.53,

and this sum the learned referee allowed to Lackey, although Lackey admitted that he was not entitled to that amount; and the reason given for awarding the excessive sum is that, upon the record as it stood, the rights of the claimants could not be definitely adjusted. On the evidence presented the referee would have been warranted in deducting the aforesaid sum of $429 from $947.53, the amount due on the bond and mortgage, and awarding the balance, $518.53, to Reukauff; and that is the disposition of the contending claims made by the court on this motion.

As to the rival claims of Simons & Moersfelder and O'Neill, it appears that the attorney for the mortgagor on May 12, 1900, at 10:48 a. m., delivered to the registry of the county of New York a mortgage to Simons & Moersfelder for record; that said mortgage was dated May 11, 1900, and that it was not delivered to the mortgagees until May 22d following; that the mortgage was given to secure an antecedent indebtedness to the mortgagees, for which indebtedness they held the mortgagor's overdue and protested notes; and that the mortgagees did not on the strength of the mortgage relinquish any security, devest themselves of any rights, or do any act to their prejudice. It further appears that the O'Neill mortgage was dated the same day as the Simons & Moersfelder mortgage; that it was given to the mortgagee in consideration of the release by one Flood of claims which said Flood had against the mortgagor for work, labor, and services and materials furnished upon other real property of the mortgagor, and for which work and labor Flood threatened to file a mechanic's lien; that between 7 and 9 o'clock in the morning of May 12, 1900, said mortgage was delivered to O'Neill; and that it was recorded in the register's office of New York county the same day at 10:49 a. m.,—one minute after the recording of the Simons & Moersfelder mortgage. As far as knowledge or notice is concerned, the mortgagees were purchasers in good faith. Under the decisions it would seem that the Simons & Moersfelder mortgage is subsequent to the one given O'Neill; for, although, as between the parties to the instrument, a delivery by the mortgagor to the register would constitute a delivery to the mortgagee (Lady Superior v. McNamara, 3 Barb. Ch. 378, 49 Am. Dec. 184; Munoz v. Wilson, 111 N. Y. 295, 18 N. E. 855; Ford v. McCarthy, 77 Hun, 612, 29 N. Y. Supp. 786), such delivery was not effective against O'Neill; the rule being that a subsequent acceptance by the mortgagee of the mortgage delivered to a recording officer or to an unauthorized third person gives effect to it from the time of its first delivery, as between the parties to it; but as to persons who have acquired title to the property, or an interest in it or lien upon it, through or under the mortgagor, before the time of the actual acceptance of the deed by the mortgagee, the subsequent acceptance gives effect to the deed only from the time of such acceptance. Parmelee v. Simpson, 5 Wall. 81, 18 L. Ed. 541; 1 Jones, Mortg. (5th Ed.) § 85; Foster v. Scythe Co., 47 Barb. 505. It follows that if the Simons & Moersfelder mortgage was not given for a valuable consideration, within the meaning of the recording acts, the O'Neill mortgage must prevail. To

constitute a purchaser in good faith and for a valuable consideration under said acts, the party receiving the subsequent conveyance must not only have received the same without notice of the prior unrecorded deed, but he must have received the same upon some new consideration advanced at the time, or must have relinquished some security for a pre-existing debt. Pickett v. Barron, 29 Barb. 505; 1 Jones, Mortg. (5th Ed.) § 460; Dickerson v. Tillinghast, 4 Paige, 215, 25 Am. Dec. 528; Webster v. Van Steenbergh, 46 Barb. 211; Wood v. Robinson, 22 N. Y. 564; Weaver v. Barden, 49 N. Y. 286; De Lancey v. Stearns, 66 N. Y. 158. The evidence of Simons & Moersfelder falls short of these requirements. Moreover, the nominal consideration recited in the Simons & Moersfelder mortgage does not constitute a valuable consideration, within the meaning of the recording acts, for the fact is that the real and only consideration was the existing and precedent indebtedness of the mortgagor. See Ten Eyck v. Witbeck, 135 N. Y. 40, 31 N. E. 994, 31 Am. St. Rep. 809. The referee's report, except as hereinbefore modified as to the Lackey and Reukauff claims, will therefore be confirmed.

Referee's report, except as hereinbefore modified as to Lackey and Reukauff claims, confirmed.