ELIZA A. MUNOZ, as Administratrix, etc., Respondent, *v.*
ELIZA A. WILSON, Impleaded, etc., Appellant.

It is only where a bond is shown to have accompanied a mortgage, and it
contains the only apparent evidence of the debt to which the mortgage
is collateral, that it must be produced, or its non-production accounted
for on trial of an action to foreclose the mortgage.

Where, therefore, it appears on the trial of such an action that, although
the mortgage recited the giving of a bond, no bond was, in fact,
executed, and the existence of and liability for the debt secured is shown
by the statements and covenants contained in the mortgage, the non-pro-
duction of a bond is not fatal to a judgment of foreclosure.

Where there has been an unqualified delivery of a mortgage to a third
person for the use of the mortgagee, with intent to make it an operative
obligation, and the mortgage is recorded by such third person, although
such delivery and record was without the knowledge of the mortgagee;
if the rights of creditors, purchasers or incumbrancers have not inter-
vened, it is competent for the mortgagee or his representatives to assent
to and ratify the arrangement and to enforce the mortgage.

M., for the purpose of defrauding his creditors, deeded certain real estate
to G. without consideration, upon a verbal agreement that the latter
should hold the same for the benefit of M., and dispose of the same as he
might direct. Subsequently M. procured G. to execute a mortgage on
the premises to C., plaintiff's intestate, for the amount of a debt due by M.
to her. The mortgage was delivered by G. to M. with authority to
deliver it to C., and M. caused it to be recorded. He did not himself
deliver it to C., and the latter died a few weeks after the mortgage was
so delivered to M. About the time of receiving the deed, G., without
consideration, executed and delivered to M. a deed conveying the premises
to his wife. M. retained it for about two years after the recording of
the mortgage, and then caused it to be recorded. In an action to fore-
close the mortgage, *held*, the facts justified a finding of delivery and
acceptance of the mortgage; and that the mortgage had a preference over
the deed.

M., as a witness for defendants, testified to certain facts, as to which there was
no direct contradictory testimony. This testimony was, however, in con-
flict with legal presumptions arising from acts and admissions of M. and
G., which were in evidence, and, in several material respects, other testi-
mony of M. was contradicted by that of disinterested witnesses. *Held*, that
the trial court was not bound by the testimony of M., even when uncon-
tradicted, but was justified in giving credit thereto only so far as it
deemed it in harmony with the other facts and circumstances of the case.

(Argued October 12. 1888; decided November 27, 1888.)

APPEAL from order of the General Term of the Supreme Court in the second judicial department, entered upon an order made December 14, 1886, which affirmed a judgment in favor of plaintiff, entered upon a decision of the court on trial at Special Term.

This action was brought to foreclose a mortgage executed by defendant George Wilson to Elizabeth J. Clay, plaintiff's intestate, the terms of which, as well as the material facts, are stated in the opinion.

The defendant, Eliza A. Wilson, wife of defendant, Michael K. Wilson, alone appealed.

*Josiah T. Marean* for appellant. One who hands a mortgage to a person, other than the mortgagee, cannot be presumed, without affirmative evidence, to intend a delivery to the mortgagee's use; he must either say something or do something indicating that he intended to part with dominion over it. (*Doe* v. *Knight*, 5 B. & C. 671.) Upon the undisputed facts in the case no delivery to the mortgagee, either actual or constructive, was ever made. (*Elsey* v. *Metcalf*, 1 Denio, 323; *Jackson* v. *Phipps*, 12 Johns. 418; *Rathbun* v. *Rathbun*, 6 Barb. 98; *Hedge* v. *Drew*, 12 Pick. 141; Sheppard's Touchstone, 58; *Young* v. *Gilbeau*, 3 Wall. 641; *Day* v. *Mooney*, 6 T. & C. 382.) If there was no bond, or if no bond was delivered, there was never any mortgage debt, for it is not pretended that George Wilson owed Mrs. Clay otherwise than by virtue of the execution and delivery of the supposed bond, and the judgment is erroneous. (*Bergan* v. *Urbahn*, 83 N. Y. 49.)

*William T. Gilbert* for respondent. Michael K. Wilson was not competent as a witness for his wife against plaintiff's objection, being a party to the suit, and the person under whom his wife derived title. (Code, § 829; *Pope* v. *Allen*, 90 N. Y. 298, 301; *Smith* v. *Cross*, Id. 549.) The evidence warrants the inference that the mortgage was given to secure Michael K. Wilson's indebtedness to Mrs. Clay.

(*Smith* v. *Cole*, 109 N. Y. 436, 439.) The admission of Michael K. Wilson to Kimball was competent, as against George and Eliza A., to prove the debt, Michael K. being at the time the real owner, and the legal title and possession being held for his benefit. (*Chadwick* v. *Founer*, 69 N. Y. 404, 407.) The act of George Wilson, at Michael's request, in giving the mortgage to Mrs. Clay, to secure his indebtedness to her, was simply a just appropriation of his property to secure or pay his debt. She is, therefore, a purchaser for a valuable consideration. (*Murphy* v. *Briggs*, 89 N. Y. 446; *Shand* v. *Handley*, 71 id. 324; *Chautauqua B'k* v. *Risley*, 19 id. 372.) The acts of Michael and George Wilson constituted a perfect legal delivery. (1 R. S. 738, § 138; 4 Kent. Com. §§ 454–456; Sheppard's Touchstone, 285; *Thompson* v. *Leach*, 2 Vent. 198; *Read* v. *Robinson*, 6 W. & S. 331.) George having signed, sealed and delivered the mortgage to Michael, without any condition or qualification, even if he had retained it, such retention, will not *per se*, affect the operation of the deed, for the efficiency of a deed depends upon its being sealed and delivered by the maker of it, not on the ceasing to retain possession of it. (*Scrugham* v. *Wood*, 15 Wend. 545; *Wallace* v. *Berdell*, 97 N. Y. 13, 23, 25; *Fisher* v. *Hull*, 41 id. 416, 422–424; *Doe dem Garnous* v. *Knight*, 5 B. & C. 671; *Xenos* v. *Wickham*, 2 H. & L. 296; *Moore* v. *Giles*, 45 Conn. 570; *Church* v. *Gilman*, 15 Wend. 656.) The placing of the mortgage on record was a step in the exercise of the authority given by the mortgagor to Michael, and is a conclusive act, showing the intent to make it effectual in behalf of the mortgagee. (*Lawrence* v. *Farley*, 24 Hun, 293; *Knolls* v. *Barnhart*, 71 N. Y. 474; *Moore* v. *Giles*, 49 Conn. 570.) The mortgage in suit is prior and paramount to the deed to Eliza Wilson, because a voluntary or fraudulent conveyance, though prior in time, cannot be set up to defeat a junior mortgage. (*Murphy* v. *Briggs*, 89 N. Y. 446; *Ledyard* v. *Butler*, 9 Paige, 132.) A mortgagee is a "purchaser," within the terms of 2 Revised

Statutes 137, section 5, and of the Recording Act (1 R. S. 756, § 1), which gives priority to the deed first recorded. (89 N. Y. 446.)

Ruger, Ch. J. Michael K. Wilson was, on February 2, 1878, the owner of the lands described in the complaint, and, on some day subsequent thereto, and prior to February fourteenth thereafter, executed and delivered to the defendant, George Wilson, a deed of such property, and the grantee thereupon entered into possession and collected rents derived therefrom.

The case does not show that any consideration was paid for this transfer; but the trial court found, upon sufficient evidence, that the deed was executed and delivered by the grantor without consideration, and with intent to hinder, delay and defraud the creditors of M. K. Wilson; and further found, at defendant's request, that it was "upon a verbal, invalid and not enforceable trust to hold the same for the benefit of M. K. Wilson, and to dispose of the same as he might be directed by said Michael." The latter being indebted to Mrs. Clay in the sum of $8,500, as found by the trial court, procured George Wilson to execute the mortgage in suit to her on October 2, 1879, and it was duly acknowledged December twenty-seventh, and recorded on December thirty-first of the same year. This mortgage, after execution, was delivered by George to Michael, and was by him caused to be recorded upon the day stated.

The court found that the mortgage was delivered to the plaintiff's intestate, and also found, at defendant's request, that the defendant George Wilson delivered the mortgage "into the hands of said M. K. Wilson with authority to deliver the same to plaintiff's intestate, but never himself delivered the same to the plaintiff's intestate."

It appeared that Mrs. Clay died on February 16, 1880, within a few weeks after the mortgage was received by Michael K. Wilson, and probably before sufficient time and elapsed to enable the register to record and return it to Michael. The court refused to find that no bond was executed

by George to accompany the mortgage, but it appeared, by the uncontradicted testimony of the mortgagor, that such was the fact. No copy of the mortgage appears in the record, but on the oral argument by the appellant's counsel, in the absence of the respondent's counsel, who submitted the case upon a printed brief, we were furnished by the former with an exemplified copy thereof; and although such copy could not, under well-settled rules, be properly received and used for the purpose of reversing a judgment, the appellant cannot complain if we consider it for the purpose of supplying the defects in the case caused by the neglect of the parties to print it therein. (*Day* v. *Town of New Lots*, 107 N. Y. 157.) This mortgage recites, among other things, that " the said George Wilson is justly indebted to the said party of the second part in the sum of eight thousand five hundred dollars, lawful money of the United States of America, secured to be paid by a certain bond or obligation bearing even date with these presents, in the penal sum of seventeen thousand dollars, lawful money as aforesaid, conditioned for the payment of the said first-mentioned sum of eight thousand five hundred dollars, on the second day of October, 1881, and the interest thereon to be computed from the day of the date hereof, at and after the rate of six per centum per annum, and to be paid semiannually therefrom and thereafter, as by the said bond or obligation, and the condition thereof, reference being thereunto had, may more fully appear; " and it was further provided therein that " the said George Wilson, for himself, his heirs, executors and administrators, does covenant and agree to pay unto the said party of the second part, her executors, administrators or assigns, the said sum of money and interest as mentioned above, and expressed in the condition of the said bond." It further appears, by the case, that George Wilson, about the time of receiving the deed from Michael K. Wilson, executed a deed of the same property to Eliza, the wife of Michael K., as grantee therein, and delivered it to Michael, who retained it in his possession until after October 4, 1881, when he caused it to be recorded. The trial court found that this con-

veyance was also made without consideration and with intent to hinder, delay and defraud the creditors of Michael K. Wilson, and did not become operative as a deed until after the delivery of the mortgage in suit.

Several alleged grounds of error are urged by the appellant as cause for the reversal of the judgment rendered in the courts below in favor of the plaintiff, which, so far as they are material, will be noticed in the course of the opinion. Among other things, it is claimed that the testimony of Michael K. Wilson should have been credited by the trial court, and the facts, so far as they are testified to by him, should be taken as undisputed, and presenting questions of law for the consideration of the court on appeal. The findings of fact by the trial court show that credit was not unconditionally given to such evidence, and we are of the opinion that the court did not err in that respect. Not only was such testimony more or less in conflict with the legal presumptions arising from the acts and admissions of Michael and the defendant George, but it was given after the death of the adverse party in interest, and under the influence of a strong pecuniary interest in the controversy. His testimony was, also, in several material respects contradicted by that of other apparently disinterested witnesses, and subject to the discredit which attaches to a person engaged in a scheme to defraud his creditors. Abundant reason, therefore, existed for the suspicion with which the trial court regarded his evidence, so far as it tended to promote his own interests. Indeed, the mere fact that a witness is the real party to an action, and interested in its result, has been deemed sufficient to require its credibility to be submitted as a question of fact, and more especially so when the testimony is improbable in itself, or inconsistent with other circumstances of the case. (*Honegger* v. *Wettstein*, 94 N. Y. 252; *Elwood* v. *W. U. Tel. Co.*, 45 id. 549; *Kavanagh* v. *Wilson*, 70 id. 177; *Gildersleeve* v. *Landon*, 73 id. 609.) There is, therefore, no reason in the assault made upon the judgment growing out of any fact testified to by Michael K. Wilson alone. The trial court could, in the exercise of its

discretion, properly discredit the whole or such portions of his evidence as it disbelieved, and give credit thereto, only so far as it deemed it in harmony with other facts and circumstances of the case.

It is also urged that the non-production of a bond by the plaintiff on the trial is fatal to her right to recover, and we are cited to the case of *Bergen* v. *Urbahn* (83 N. Y. 49), as authority for this proposition. We think, under the facts above referred to, the case cited is an authority for the plaintiff. The learned judge writing the opinion in that case, referring to and approving the case of *Goodhue* v. *Berrien* (2 Sandf. Ch. 630), says : "There the mortgage was given to secure sundry liabilities incurred for the mortgagor. This appeared by its terms, and although it also referred to a bond, it was proven that no bond was in fact given. The case now in hand contains neither of these facts." It is only, we think, when a bond is shown to have accompanied a mortgage, and contains the only apparent evidence of the debt to which the mortgage is collateral, that it must be produced, or its non-production accounted for on the trial. The theory upon which this is required, is that the possession of the collateral security alone furnishes no conclusive evidence of the ownership of the debt secured thereby, as it is the mere incident of the bond, and, *non constat*, the bond may have been transferred to another party, who, in that event, would be entitled to the possession of the collateral security. (*Merritt* v. *Bartholick*, 36 N. Y. 44 ; *Langdon* v. *Buel*, 9 Wend. 80.)

The reason of the rule wholly fails when there has never been a bond, or when the existence of and liability for the debt secured is proved, by the admissions and covenants contained in the mortgage. The mortgage in this case expressly admits the existence of an indebtedness by the mortgagor to the mortgagee ; and although it also states that it is secured to be paid by a bond, that recital is disproved by the positive testimony of the mortgagor. The mortgage also contains an express covenant to pay to the mortgagee, her executors, administrators or assigns, "the said sum of money and inter-

est as mentioned above, and expressed in the condition of the said bond." The mortgage further authorized its foreclosure if default shall be made "in the payment of the said sum of money above mentioned or the interest that may grow due thereon."

Each one of these latter clauses refers as well to the sum admitted therein to be owing by the mortgagor to Mrs. Clay as to the sum also stated to be expressed in the bond, and renders the reference to the bond unnecessary and superfluous.

That such a mortgage is a valid security, and authorizes its foreclosure upon default, and a judgment for a deficiency against the mortgagor, is fully sustained by the authorities. (Jones on Mortgages, § 72; *Goodhue* v. *Berrien*, 2 Sandf. Ch. 630.) We are, therefore, of the opinion that the non-production of the bond was sufficiently accounted for, and afforded no ground for denying the relief sought by the plaintiff.

The appellant, however, insists that the mortgage in question was never delivered to the mortgagee, and, therefore, did not become a valid instrument. It is, undoubtedly, a requisite to the validity of such an instrument that it should not only be delivered, but also accepted. The contention is founded upon the assumption that the evidence of Michael K. Wilson must be taken as uncontradicted evidence, and as establishing affirmatively the fact of non-delivery.

As we have seen, however, the trial court might properly discredit his evidence in that respect, and did so upon this point by finding that the mortgage had been delivered. We think there was sufficient evidence in the case to support this finding. That the mortgage was executed and delivered by George to Michael Wilson, with intent to effectuate a delivery to Mrs. Clay, and thus secure the debt admitted to be due her from the mortgagor, is plainly inferable from the terms of the mortgage, and the acts and conduct of the parties. Certainly no other purpose can be imputed to the mortgagor, for it cannot be assumed that he supposed he was engaged in an idle ceremony intended to have no legal effect. He must be

assumed to have intended just what his acts and conduct imputed, viz. : to give Mrs. Clay security for an indebtedness owing by him to her, arising out of his assumption of his uncle's debt.

In this transaction Michael K. assumed to represent the mortgagee, and when George delivered the mortgage to him, it was delivered to him as the agent of Mrs. Clay, and with the expectation that he would deliver it to her. So far as George was concerned that delivery was intended to be uncon ditional and effectual, and to make the instrument an operative security in the hands of Mrs. Clay, beyond his power to recall. ( *Verplanck* v. *Sterry*, 12 Johns. 536.) Michael was simply the messenger through whom the ultimate delivery was to be effected, and as no permission, express or implied, was con ferred upon him to retain it, he had no authority to change its terms, or withhold its delivery.

Assuming the validity of the transfer from Michael to George, the acceptance of this mortgage by Michael would have constituted a good payment *pro tanto* of the purchase-price of such land to him by George. (*Murphy* v. *Briggs*, 89 N. Y. 450.) We think that when there has been an unqualified delivery of a mortgage by a mortgagor, to a third person, with intent thereby to make it an operative obligation, an acceptance thereof by the mortgagee may, under circum-stances like those arising in this case, fairly be presumed.

The head-note in *Church* v. *Gilman* (15 Wend. 656), states the law of that case as follows: " Delivery is essential to the validity of a deed; but the delivery need not be to the grantee in person ; it is enough if the deed be delivered to a third person for the use of the grantee. If the delivery to the third person be absolute, the grantor not reserving any future control over the deed, the estate passes ; the assent of the grantee to accept the conveyance being presumed, from the fact that the conveyance is beneficial to him." The doctrines of this case were recognized in the case of *Gifford* v. *Corrigan* (105 N. Y. 223). (See, also, *Elsey* v. *Metcalf*, 1 Den. 323.) It was said in *Jackson* v. *Perkins* (2 Wend. 317): "A recorded

deed may be used as evidence without further proof. * * * Proof of the due execution of a deed, and of its having been recorded, is perhaps *prima facie* evidence of its delivery." But it was further said that this presumption might be rebutted by the grantee.

In *Tompkins* v. *Wheeler* (16 Pet. 118), it was said, in reference to an assignment for the benefit of creditors: "This deed is absolute upon its face, without any condition whatever attached to it; and being for the benefit of the grantees, the presumption of law is, in the absence of all evidence to the contrary, that the grantees accepted the deed." And it was further said: "It is laid down in Sheppard's Touchstone, page 58, that if a deed be delivered to a stranger for the use of the grantee, without any condition annexed, making it an escrow, it is a delivery to the grantee." (See, also, 5 B. & C. 692.)

The Chancellor said in *The Lady Superior*, etc., v. *McNamara* (3 Barb. Ch. 378): "A deed may be delivered to a stranger for the grantee named therein without any special authority from the grantee to receive it for him. And if the grantee assents to it afterwards the deed is valid from the time of the original delivery. *Omnis ratihabitio retrotrahitur et mandato sine licentia œquiparatur.* (Wing. Max. 485.) It is upon this principle that it has frequently been held that a delivery of a deed to the proper recording officer to be recorded, if intended to vest the title immediately or absolutely in the grantee, either as a trustee or otherwise, is a valid delivery; if not afterwards dissented from by the grantee."

In *Lawrence* v. *Farley* (24 Hun, 293) it was held, "that in the absence of any evidence to the contrary, the fact that the instrument was found upon the record duly acknowledged or attested was *prima facia* evidence of its delivery."

In *Fisher* v. *Hall* (41 N. Y. 421), the opinion states that: "It is not necessary that the grantee, or his agent or servant, should be present at the execution in order to have such a delivery of the instrument made as will give it operative vitality and effect. But it is necessary that it should be placed within the power of some other person for the grantee's use,

or that the grantor shall unequivocally indicate it to be his intention that the instrument shall take effect as a conveyance of the property, in order to have it produce that result."

In *Rathbun* v. *Rathbun* (6 Barb. 102), the late Judge Allen, writing the opinion, said, in a case where the plaintiff had executed a deed to his father, of his own volition and without the knowledge of the latter, and delivered it to the county clerk for record, that " its delivery to the clerk of the county for the use of the defendant, was a perfect delivery by the plaintiff, and upon acceptance by the defendant, the deed took effect from the time of such delivery." (*Jackson* v. *Bodle*, 20 Johns. 187.) The presumption of delivery arising from the recording of a deed by a grantor is assumed by Church, Ch. J., in *Knolls* v. *Barnhart* (71 N. Y. 474), and, see *Moore* v. *Giles* (49 Conn. 570).

As neither the rights of creditors, purchasers or incumbrancers have intervened, we are of the opinion that it was competent for Mrs. Clay, or her representatives, to assent to and ratify the arrangements made for her security, and enforce the mortgage for the benefit of her estate. In *Murphy* v. *Briggs* (89 N. Y. 452), it was held that a mortgage given by a fraudulent grantee at the request of his grantor, to the creditor to secure the debt of such grantor, if duly recorded, was entitled to preference even over the claims of a subsequent purchaser.

A duly recorded mortgage has preference over a prior unrecorded deed and there is no theory of this case which can give to Mrs. Wilson's deed any effect as against the claim arising under the mortgage in suit. (*Murphy* v. *Briggs, supra.*)

It follows that the judgment should be affirmed

All concur.

Judgment affirmed.