## WILCOX v. DROUGHT et al.

(Supreme Court, Appellate Division, First Department. April 25, 1902.)

MORTGAGES — RECORDING — DELIVERY — PRIORITY — FORECLOSURE — SURPLUS MONEY.

A mortgagor owed the interpleader for work, and agreed to pay him with a note secured by a mortgage, subject to prior incumbrances. She also owed appellants for materials, for which she had given her notes, and promised them a mortgage subject to such prior liens, but informed them of the promise to the interpleader. She executed both mortgages, and left appellants' with her attorney, with directions not to deliver it until directed by telephone. After delivering interpleader's mortgage, and receiving a release of his claim, she directed delivery of the other mortgage. Her attorney immediately delivered the mortgage to the recorder, and notified appellants. One minute later interpleader's mortgage was filed for record. Appellants did not surrender their notes or part with any consideration for their mortgage. Held, that appellants' mortgage did not take effect until they accepted it, which was after interpleader's mortgage was recorded, and their lien was subordinate to his, entitling him to the surplus money remaining on foreclosure of the prior incumbrances.

Appeal from special term, New York county.

Action by Harriet H. Wilcox against Julia Drought and others, defendants, and Josephine O'Neil, impleaded. From an order overruling exceptions to and confirming the report of a referee allowing the claim of the interpleader to money in the hands of the chamberlain of the city of New York to the credit of this foreclosure action (73 N. Y. Supp. 587), defendants Berry B. Simons and Jacob M. Moersfelder appeal. Affirmed.

On the 11th day of May, 1900, the defendant Julia Drought was the owner of premises situated at the southwesterly corner of 176th street and Monroe avenue, and also of premises situated at the northwest corner of 127th street and Fifth avenue, which may be referred to as the Monroe avenue and Fifth avenue houses, respectively. Her husband, William Drought, was her agent. She was indebted to Timothy Flood, a plasterer, in the sum of $1,223, for materials furnished and services rendered to secure which he was entitled to file a mechanic's lien against the Fifth avenue house. For two weeks or more prior to the last-mentioned day he had been urging payment of his claim, and threatening to file a lien if it were not paid or secured. At this time defendant Drought was also indebted to appellants in the sum of $3,175

for ironwork on the Fifth avenue house, for which promissory notes had been given, some of which had matured and been protested for nonpayment, and they had been pressing payment. Mrs. Drought called on them, pursuant to a letter which they wrote to her husband some two or three weeks prior to the 11th of May, and upon their demanding payment she told them that their claim was large, and that she could not pay it. After several interviews she finally proposed to give them a mortgage upon the Monroe avenue house, upon which there were three outstanding mortgages, the first for $12,000, the second for $1,500, and a third which remained as security for about $700. She informed them of these incumbrances, and that Flood was annoying her husband, who was ill, by pressing his claim, and threatening to file a mechanic's lien on the Fifth avenue house; that her husband had promised Flood a mortgage on the Monroe avenue house, but that his claim was small (about $1,200), and that she could take care of that, and could pay the other smaller claims out of money that was coming in. Finally, it was agreed that they should take as security a mortgage on the Monroe avenue house which should be a lien next after the three mortgages already mentioned. It was expressly understood that it should be prior to the contemplated mortgage to secure Flood's claim. Nothing was said apparently about the surrender of the notes or an extension of credit. The bond and mortgage were to be drawn by her attorneys, and sent to their attorneys for examination. Mrs. Drought agreed to pay the expense attending the execution of the papers and the recording of the mortgage. The terms of the bond and mortgage do not appear to have been discussed. The mortgage was not prepared at once, and they wrote to her. She called on them, and they insisted that there must be no further delay. On the 11th day of May, 1900, Mrs. Drought signed and acknowledged two bonds and mortgages drawn by her attorney, all dated on that day, payable November 11, 1900, and bearing 6 per cent. interest, and the mortgages covering the Monroe avenue property. One of these bonds and mortgages was for $3,175, and ran to appellants, and the other to Josephine O'Neil for $1,223, the amount of Flood's claim. Mrs. Drought's attorney erroneously understood that appellants' mortgage was to have priority over the other. On that afternoon he accompanied his client to meet Flood, pursuant to an appointment, but, not finding him, it was arranged between her and her attorney that the bond and mortgage to appellants which she left with him should not be delivered until he should receive a telephone message from her directing its delivery. At from 7 to 8 o'clock on the morning of May 12th, Mrs. Drought delivered the mortgage to Josephine O'Neil in absolute payment of Flood's claim for work and materials furnished in the construction of the Fifth avenue house, and received a release thereof. It does not appear why this mortgage was taken in the name of the respondent Josephine O'Neil instead of Mr. Flood, but it is not claimed that she has any other or different rights than he would have had had it been taken in his own name, and she testified that she expected him to do whatever was necessary to protect her rights under the same. It appears that at the time of the delivery of the O'Neil bond and mortgage Mrs. Drought expressly represented that the premises in question were covered only by the three mortgages first mentioned; also that said mortgage was to be a lien immediately following them. It further appears from the testimony of Flood and of Kelly, O'Neil's attorney, which is not controverted, that Mrs. Drought told them, on a suggestion being made with reference to the necessity of the recording the mortgages at once, that they might have it recorded at their leisure, and need not record it until the next day; and also said, "I am not so mean a person as to go down and put another mortgage on record before it." Anticipating that the mortgage to appellants was to be recorded first, Mrs. Drought's attorney had written and signed a letter to be sent to them, in which he stated that pursuant to the instructions of Mrs. Drought he had prepared the mortgage to them, and had had it recorded at once, so that it might become a "prior lien to another mortgage which is to be given," and that he would forward the mortgage to them as soon as it was returned from the register's office. Some time in the forenoon of May 12th, according to his testimony, he received a telephone message from Mr. Drought saying that the O'Neil bond and mortgage had been

delivered, and that he might deliver the Simons & Moersfelder bond and mortgage. He thereupon, without changing the letter, inclosed it and the bond to them by mail, and sent the mortgage to the register's office for record. The letter and bond were received by the mortgagees that day. Mrs. Drought testified that she did not want the mortgage to appellants delivered until after she had obtained a settlement with Flood, because she feared trouble with him. Subsequent to her agreement with appellants she found it necessary to settle with Flood upon the terms stated. It does not appear that either party knew in advance of her promise to give the other priority, or the fact of the delivery or recording of the other's mortgage. The mortgage to appellants was recorded, according to the record, at 10:48 a. m., June 12, 1900, and the mortgage to respondent one minute later. It does not appear that appellants had any notice of the respondent's mortgage until the early autumn of that year; but Flood discovered on the following day that the mortgage to appellants was recorded ahead of that to respondent. He thereupon filed a mechanic's lien for the indebtedness represented by the mortgage to the respondent, and subsequently brought an action to foreclose it, in which the defendant Drought pleaded payment by the mortgage to respondent. After filing the mechanic's lien Flood procured from the respondent a discharge of the mortgage, and tendered it, with the bond and mortgage, to Mrs. Drought's attorney, apparently for the purpose of rescinding on account of the fact that the mortgage to appellants had been recorded first; but it appears that he took no step to rescind until after filing the mechanic's lien, and the facts are not sufficiently shown to indicate an irrevocable election on his part in that regard, and, inasmuch as the appellants make no point in this connection, it is unnecessary to consider the question of rescission or election. On the 21st day of May, 1900, the attorney for Mrs. Drought received the mortgage from the register's office, and mailed it to appellants, who received it the next day, and retained it without objection.

Argued before VAN BRUNT, P. J., and PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

Mark Ash, for appellants.
Mark G. Holstein, for respondent.

LAUGHLIN, J. The respondent claims that appellants are not "subsequent purchasers in good faith and for a valuable consideration," within the meaning of section 241 of the real property law (chapter 547, Laws 1896), and that her mortgage, having been first delivered, although subsequently recorded, is the prior lien. The referee and special term have so held, and this is the important question presented by the appeal.

It is urged on the part of the respondent that there was no delivery of appellants' mortgage as against the intervening rights of third parties until it was received from the register's office and mailed to them. It is well settled that the delivery of a deed or mortgage to a recording officer, with intent that it shall become operative, although without the knowledge of the party to be benefited, constitutes a good delivery as between the parties, and an acceptance will be presumed unless the grantee or mortgagee repudiates the transaction when it comes to his knowledge. Lady Superior of Congregational Nunnery v. McNamara, 3 Barb. Ch. 375, 49 Am. Dec. 184; Ford v. McCarthy, 77 Hun, 612, 29 N. Y. Supp. 786; Munoz v. Wilson, 111 N. Y. 295, 18 N. E. 855; Bank v. Bonnell, 46 App. Div. 302, 61 N. Y. Supp. 521; Edlich v. Gminder, 65 App. Div. 496, 72 N. Y. Supp. 885. The rule is otherwise, however, where the

grantor or mortgagor who causes the instrument to be recorded does not intend that it shall become operative. Parmelee v. Simpson, 5 Wall. 81, 18 L. Ed. 542; Foster v. Scythe Co., 47 Barb. 505.

The referee has specifically found, and the evidence supports the finding, that the respondent's mortgage was made, delivered, and accepted for a valuable consideration, and upon the agreement and understanding that it was to be a lien on the premises, subject only to the three prior mortgages, and without notice or knowledge on the part of the mortgagee of the existence of the mortgage subsequently delivered to the appellants. While it appears that Mrs. Drought hesitated for a time in deciding whether to give priority to appellants or respondent in securing their respective claims, it is evident that she finally determined to give the respondent priority. This is manifest from her withholding delivery of the mortgage until after she had delivered the mortgage to the respondent. She probably deceived the appellants in this regard, but it is likely that her intention would have been consummated in such a manner as to avoid any controversy, were it not for the fact that her attorney instead of delivering the mortgage to appellants, as he was authorized and directed, sent it to the recording office instead. When the appellants subsequently accepted the mortgage, the mortgage to respondent was upon record, and, it being the intention of the mortgagor that it should have priority, I think the appellants are chargeable with having accepted it subject to the rights of the respondent.

The mortgage to respondent having been first made and delivered for a good consideration between the parties, it takes priority over the mortgage to appellants, unless the latter is given priority by the recording acts. Cary v. White, 52 N. Y. 138. If the appellants are subsequent purchasers in good faith and for a valuable consideration, the question arises when they became such. Until the appellants accepted the mortgage, they were at liberty to reject it. At the time it was delivered to the recording officer the appellants could have receded from their parol negotiations, and have filed a mechanic's lien or otherwise enforced their claim. There could, therefore, be no actual binding delivery to them until they had knowledge of the facts, so that they might ratify the act of the mortgagor in executing and having the mortgage recorded, or disaffirm the transaction. In the case at bar that time was subsequent to the recording of the respondent's mortgage.

I think the rule that where the grantor or mortgagor executes and records a deed or mortgage without the knowledge of the grantee or mortgagee a subsequent acceptance by the grantee or mortgagee will give effect to the instrument from the time of its delivery to the recording officer should not apply in a case where the rights of third parties have, as here, intervened. 1 Jones, Mortg. (5th Ed.) § 85; Thomas, Mortg. § 474; Munoz v. Wilson, supra; Foster v. Scythe Co., supra; Parmelee v. Simpson, supra. Furthermore, it is not shown that the appellants were purchasers for a valuable consideration, within the meaning of the recording act. The mortgage was given as security for an antecedent debt. The appellants retained the notes which represented the indebtedness, and, so far as appears,

no new notes were given, and they did not part with any property or right or waive any remedy.

These views lead to the conclusion that the mortgage to respondent takes preference over the mortgage to appellants, and that the order appealed from should be affirmed, with costs.

O'BRIEN, J., concurs. VAN BRUNT, P. J., concurs upon the ground that the appellants are not purchasers for value. PATTERSON, J., concurs in result.