for the jury to determine, and they may either grant or withhold it in their discretion. It forms a part of the damages which they may award, and the court has no power to award it as matter of law. Brush v. Long Island R. R. Co., 10 App. Div. 535, 42 N. Y. Supp. 103, affirmed on appeal 158 N. Y. 742, 53 N. E. 1123. The court was therefore wrong in assuming to award interest upon the verdict unless the parties have stipulated that he might. At the time of the colloquy above adverted to, defendants' counsel offered to concede, if the court required, that the plaintiffs were entitled to interest upon the recovery if they should obtain one. The court asked whether counsel was willing to concede that interest should be awarded, but declined to require the concession; and defendant's counsel stated that it did not seem to him that, as matter of damages, it was properly before the court. Subsequently, at the close of the case, the stipulation which has been already quoted was made. We think the fair construction of all that took place upon the subject is that the defendants must be regarded as having stipulated that, if the plaintiffs had a recovery, the court might add interest to the verdict, in its discretion. As to this matter the court was substituted for the jury. In this view, no error was committed, as it was competent for the defendants so to stipulate.

The result leads us to the conclusion that the judgment and order should be affirmed, with costs. All concur, except VAN BRUNT, P. J., who dissents.

(96 App. Div. 581.)

SYRACUSE SAV. BANK v. MERRICK et al.

(Supreme Court, Appellate Division, Fourth Department. July 6, 1904.)

1. MORTGAGE—ASSIGNMENT—BONA FIDE PURCHASER—RELIANCE ON RECORD AS TO TITLE OF ASSIGNOR.

The subsequent purchaser in good faith of a bond and mortgage delivered at the time of the assignment may rely on the record as to the title of the assignor, though the bond was not produced.

2. SAME—GOOD FAITH OF ASSIGNOR—EVIDENCE—SUFFICIENCY TO JUSTIFY FINDING.

Testimony showed that the owner of a bond and mortgage, having made an unrecorded assignment of the same, executed a second assignment thereof to a bank, which, on discovering that the bond was not delivered, called the assignor's attention thereto, and he answered that it was at his office, and that he would furnish it. He also made a statement to the bank at the time of the assignment that he was the then owner of the bond and mortgage, and had been for some time past, and other statements as to their validity, freedom from usury, etc.; reciting that the representations contained were for the purpose of having the bank discount his note and accept the assignment. *Held* to warrant a finding of good faith on the part of the bank in relying on the record as to the title of its assignor.

McLennan, P. J., dissenting.

Appeal from Trial Term.

Action by the Syracuse Savings Bank against Charles H. Merrick and others. From a judgment for plaintiff, defendants Charles H. Merrick and another, as executors of James Tolman, deceased, appeal. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

Tracy, Chapman & Tracy, for appellants.

Lewis & Crowley, for respondent Salt Springs Nat. Bank.

Hiscock, Doheny, Williams & Cowie, for respondent Syracuse Sav. Bank.

Thompson, Woods & Smith, for respondent James E. Hubbell, guardian, etc.

STOVER, J.   This appeal involves the construction of the acts with reference to the recording of conveyances of real estate, in order to determine the priority of liens; the action being one for the foreclosure of a mortgage.

On August 2, 1895, George B. Warner was the owner of the bond and mortgage in question, and on that day assigned the same to one Tolman as collateral security for a note made by himself and another. The assignment to Tolman was not recorded, and on the 16th day of May, 1900, Warner executed a second assignment of the same bond and mortgage to the defendant Salt Springs National Bank to secure the sum of $7,000. The mortgage was delivered to the bank at the time of the assignment, but the bond was not delivered. The transaction by which the transfer was made involved the transfer of a number of other securities—some 26 in number—and upon their delivery to the defendant bank the attorney discovered that the bond in question and one or two others were not in the package delivered. The attention of Warner was called to the fact, and Warner answered that they were at his office, and he would furnish them. Warner also made a statement to the bank at the time of the assignment that he was the then owner of the bond and mortgage, and had been for some time past, and other statements as to their validity, freedom from usury, etc.; the statement reciting that the representations contained were made for the purpose of having the bank discount the note and accept the assignment. The trial court found that the bank was a purchaser in good faith of the mortgage, and adjudged that the assignment to the Salt Springs National Bank was entitled to priority over the assignment of the bond and mortgage to Tolman, and that the interest of said bank in any surplus arising from the sale was prior and paramount to that of Tolman.

It is urged on behalf of the appellant that the recording acts do not apply, inasmuch as the nonproduction of the bond was notice to the bank of the rights of Tolman, and that the inquiries made by the bank were not sufficient to relieve it from the presumption of notice. The case of Kellogg v. Smith, 26 N. Y. 18, is relied upon as an authority for the proposition that a party receiving an assignment is bound to have the bond produced, or take the assignment at his own risk. The case of Kellogg v. Smith, supra, cannot be taken as authority for the broad proposition. In that case the mortgage contained a covenant that it should not be assigned without the consent of or notice to the mortgagor. It was assigned without such consent or notice, and subsequently the mortgagee again assigned to a person who learned by

inquiry that the mortgagor had not received notice of the previous transfer. The second assignment was recorded; the first was not; and it was held that the first assignee obtained title to the securities. Neither the bond nor mortgage were delivered to the second assignee. In the discussion of Bacon v. Van Schoonhoven, 87 N. Y., at page 451, the cases of Brown v. Blydenburgh, 7 N. Y. 141, 57 Am. Dec. 507, and Kellogg v. Smith, supra, are discussed, and the court there state that the holding in these cases is that the fact that the mortgagee does not produce the bond is a circumstance which should put the mortgagor upon inquiry. It is said in Campbell v. Vedder, 42 N. Y. 174, that a "subsequent purchaser, in good faith," in the recording act, as to the case then under discussion—being a case arising upon failure of an assignee to record his assignment of a mortgage—"means a purchaser of the mortgage assigned, not a purchaser of the premises." And so we come to the proposition that a subsequent purchaser in good faith may rely upon the record as to the title of his assignor. Following the contention of the appellant further, that the facts in this case do not show a purchaser in good faith, we are inclined to adopt the finding of the trial court in that particular. Good faith becomes a question of fact where usual care is exercised in transactions. In this case the facts are undisputed, substantially, that the respondent bank made inquiry as to the bond, obtained a full statement with reference to its ownership, and relied upon the apparent record title to the mortgage. It would be idle to say that the statute protects assignees in good faith of mortgages, if, in addition to the record title and good faith, it is still required that the bond should be actually produced upon a transfer, for then the protection depends upon the production of the bond, and not upon either the record or good faith; and the record of title to a mortgage would not be such protection as the statute clearly intended to extend to purchasers. We cannot say that the trial court has drawn a wrong inference as to good faith from the testimony in this action, and, it not clearly appearing that this finding is erroneous, we do not feel called upon to challenge it.

There can be no question as to the proposition for which the appellant strongly contends, that the bond is the evidence of the debt, and that the mortgage is security, as an incident thereto. Upon legal principle, and in the absence of statutory regulation, the assignment of the mortgage without the bond would convey nothing to a purchaser. But the title may be transferred by assignment, and equities may have to be dealt with in a variety of forms. If necessary to adjust equities that may arise, the security may be separated from the debt, and such disposition made of each as shall subserve the equities of the case. The power of the Legislature by the recording act to separate the mortgage interest in the land, and transfer it to a subsequent assignee, as a distinct thing from the mortgage debt, as evidenced by the bond or other instrument in the hands of the first assignee, to be enforced as he may be able to enforce it without the mortgage security, is unquestionable. The Legislature has undertaken to regulate transfers of interests in real estate, and has provided that a mortgage, although it may have no validity without an accompanying debt, shall be recorded,

in order to protect its owner against intervening equities, and that the assignment of this mortgage, if its owner desires to be protected, shall be put of record, so that people exercising ordinary care and acting in good faith may be able to deal upon the strength of the record, as the owner of the security sees fit to leave it or make it; and this protection goes not only to the equities that may intervene with reference to the estate or title to the land itself, but attaches to the assignment or transfer, which may be, and is in some instances, a mere chattel interest. We think the judgment of the trial court was warranted, and the judgment should be affirmed.

Judgment affirmed, with costs. All concur, except McLENNAN, P. J., who dissents.

McLENNAN, P. J. (dissenting). It seems to me that the only question presented by this appeal, upon the facts as found by the learned trial court, which findings are amply supported by the evidence, is, which one of the interested parties—the Salt Springs National Bank, or the estate of James Tolman, deceased, represented by the appellant executors—is the owner of the debt, the payment of which the mortgage in question purports to secure. It must be conceded that, if the respondent bank does not own such debt, any security which it may hold to secure its payment or collection is void and valueless as to it.

The material facts are not in dispute. On the 2d day of August, 1895, the bond and mortgage which are the subjects of controversy herein were duly executed and delivered to the defendant George Warner for full value, and concededly he thereupon became the absolute owner of the same. Such instruments were executed by the defendant Mary Mooney, the widow of one Daniel Mooney, who had died intestate, and who at the time of his death was the owner of the fee of the premises in question, by Catharine and Annie Mooney, adult children of the deceased, and by Mary Mooney as special guardian of David R. and Lucy Mooney, infant children of said Daniel and Mary Mooney; said parties being the only heirs and next of kin of said Daniel Mooney, deceased. Mary Mooney, as special guardian, executed the bond and mortgage in question pursuant to an order of the county court of Onondaga county, duly made in proceedings instituted for leave to sell or mortgage infants' real estate, pursuant to the statute. By the terms of the bond thus executed, the obligors above named and therein mentioned jointly and severally obligated themselves to pay the sum of $8,398.92 to said George B. Warner, with interest thereon as follows:

"Said principal sum payable in fifteen years from the date hereof with interest computed from August 1st, 1895, payable semiannually from August 1st, 1895."

The bond also contained this further recital:

"This bond and accompanying mortgage as far as the above-named infants are concerned is executed in pursuance of an order of the Onondaga County Court dated August 2nd, 1895, made in proceedings in said court for such purpose."

89 N.Y.S.—16

On the same date the mortgage accompanying said bond was executed by the same parties, and in like manner, and contained, among others, the following provision:

"Provided always that if the said parties of the first part, their executors or administrators shall pay unto the said party of the second part [George B. Warner], his executors, administrators or assigns said sum of money mentioned in the condition of the bond or obligation and the interest thereon at the time and in the manner mentioned in the condition, that then these presents and the estate hereby granted shall cease, determine and be void."

There was also a provision in the mortgage—

"That the parties of the first part will pay the indebtedness as hereinbefore provided and if default be made in the payment of any part thereof the party of the second part shall have the power to sell the premises herein described according to law."

Said George B. Warner, having received the bond and mortgage in question, executed as aforesaid, on the day of its delivery to him, to wit, on the 2d day of August, 1895, assumed to assign the same to James Tolman, by an instrument in writing dated that day, for the purpose of securing to said Tolman the payment of $3,500, which, concededly, Tolman loaned or paid to Warner in reliance upon such assignment, which was regular in form, and upon the bond in question, both of which were delivered to him. Said bond, with the assignment, were retained by Tolman, and ever afterwards kept in his possession or that of his executors. He did not have the actual physical possession of the mortgage. At the time of the assignment it had not been recorded, and therefore he probably gave it to Warner, who had for some time acted as Tolman's attorney and confidential legal adviser, for the purpose of having the same put upon record. At all events, on the day following, August 3, 1895, as appears by the record, the mortgage was recorded in the clerk's office of Onondaga county, and it afterwards came into the possession of Warner—just how or when does not appear; but it was retained by him until the 16th day of May, 1900, when he assumed to assign it, together with the bond, to the respondent Salt Sprinks Bank for a present and full consideration, as found by the learned trial court; and the bank on the 20th day of May, 1900, caused such assignment to be recorded in the office of the clerk of the county of Onondaga. This mortgage was delivered by Warner to the bank, but the bond was not so delivered, for the reason that it had been purchased by Tolman, delivered to him, and was then in his possession. Tolman did not cause the assignment of the bond and mortgage to him to be recorded until the 12th day of November, 1902, which was after the assignment to the bank had been recorded.

The learned trial court found:

"Twelfth. That after the death of said Daniel Mooney, and on or about August 2, 1895, for the purpose of securing the payment to George B. Warner of the sum of $8,398.92, with interest thereon from that date, said Mary Mooney, individually, and said Catharine A. Mooney, Anna Mooney, David B. Mooney, and Lucy Mooney, infants, by Mary Mooney, their special guardian, executed and delivered to said George B. Warner a bond bearing date on that day, sealed with their seals, whereby the said obligors did bind themselves, their heirs, executors, and administrators, in the penalty of $16,797.28, upon condi-

tion that the same should be void if the said obligors, their heirs, executors, and administrators, should pay to said George B. Warner, his executors, administrators, or assigns, said sum of $8,398.92 in fifteen years from the date thereof, with semiannual interest, payable semiannually; being the bond set forth in the amended answer of the defendant executors of James Tolman.

"Thirteenth. As collateral security for the payment of said indebtedness, said Mary Mooney and Catharine A. Mooney, and also Anna Mooney, infants, by Mary Mooney, their special guardian, under an order of the County Court of Onondaga county, which had jurisdiction therefor, and in proceedings duly. had therein for that purpose—said order being dated August 2, 1895, and which order authorized and empowered said Mary Mooney, as such special guardian, to execute the same—on said August 2, 1895, duly executed, acknowledged and delivered to said George B. Warner, under their hands and seals, a mortgage whereby the following described premises, which included the premises hereinbefore set forth, covered by said mortgage aforesaid, given to the plaintiff herein, to wit: 'All that tract or parcel of land, being parts of lots 2 and 3 of Block No. 193 of the City of Syracuse, according to Lathrop's map of the village, now City of Syracuse, situate on South West street in said city, being eight rods in front and nine rods deep, and a strip of land lying immediately to the south of said premises owned by Daniel Mooney at the time of his death, and for many years prior thereto, together with the appurtenances and all the estate and rights of the parties of the first part in and to said premises.'"

The findings quoted, if justified by the evidence, as they certainly are, conclusively establish that under the law of this state the obligation to pay contained in the bond in question constituted the principal debt, and that the mortgage was "a mere security appurtenant and secondary." Kellogg v. Smith, 26 N. Y. 18; Kortright v. Cady, 21 N. Y. 343, 78 Am. Dec. 145. In this connection it should be said that when the respondent the Salt Springs Bank took the assignment to it of the bond and mortgage, and received from Warner the mortgage without the bond, its attorney inquired as to where the bond was, and why it was not delivered, and was informed by Warner that the bond was in the latter's safe, in his office, and that it would be produced and delivered to the bank. Warner also represented to the bank that he was the absolute owner of such bond and mortgage. Clearly Warner falsely stated or misrepresented in this respect, but we are inclined to regard the finding of the court as conclusive:

"That said bank took said assignment in good faith and for value. * * * The said bank made due and diligent inquiry as to the rights of other persons in and to said bond and mortgage, and could not discover that the defendant Warner had not full right to assign the same."

It will not, however, be pretended that the bank made any inquiry as to the ownership of the bond by Tolman, or of any person who had any right or authority to speak for him in that regard; and, concededly, if Tolman had any rights or interest in the bond, Warner had no authority by his act or omissions or representations to divest Tolman of such right or interest.

The pertinent inquiry, therefore, is, did Tolman, by reason of the transaction between him and Warner, become the owner of the debt, the bond—the promise to pay, of the persons who executed the same —which he had paid for, and had in his possession during all the time Warner was assuming to sell the same to the Salt Springs National Bank? I can conceive of no way by which Tolman could have more effectually become the owner of the bond in question, or of

the obligation to pay contained therein, than by the transaction which he had with Warner, the then owner of such bond and obligation. It does not seem to me to be of any consequence that Tolman, either through the fraud of Warner or his own negligence, failed to get possession of the mortgage intended solely as security for the payment of the debt or obligation assumed by the parties who executed such bond. As I understand it, Tolman had the right to say: "The bond—the promise to pay therein stipulated—is sufficient. I do not care for or desire any other security. I will not incur the expense of recording a mortgage or any other security for the payment of such debt or obligation."

It is perfectly well settled that, if default had been made in payment according to the conditions of the bond in question, Tolman could have brought and successfully maintained an action at law thereon without reference to the mortgage, or any other security given to secure the payment of the bond. Suppose, for example, that Warner had offered to Tolman his promissory note, and had tendered to him a mortgage drawn in due form to secure the payment of such note; would not Tolman have had the right to purchase such note, and to decline or refuse, for any reason which he deemed sufficient, to accept the mortgage offered or tendered to secure the payment of such note? It seems to me axiomatic that a person to whom is given or presented the opportunity to buy a debt or obligation, which in one fashion or another is secured, may say to the seller, "I will buy the debt or obligation offered, but I do not care for the security," and that the failure of the buyer in such a case to accept the security offered, and to protect it by recording or otherwise, does not invalidate the buyer's title to the debt or obligation which he purchased. It must be the law, I think, that a person has a right to purchase a promissory note, bond, promise, or obligation to pay, which is evidenced by writing, and, if he obtains possession of such note, bond, promise, or obligation, for value, and without fraud or collusion, he becomes the absolute owner of the same, and may refuse to accept, or, if accepted, may relinquish, any security which may be offered or accepted to secure the payment of such debt, note, bond, promise, or obligation, and that such security, whether in the form of a mortgage or otherwise, if in the hands of any party who does not own the debt or obligation for the payment or collection of which it was given to secure, is void and valueless. Any other doctrine would lead to most strange results. A. asks B. for a loan of $500, and tenders as security for such loan a promissory note of a third party, and a mortgage securing the payment of the same. B. says: "The note is sufficient. I do not want the mortgage." A. then delivers the note to B. B. keeps the note, and permits A. to retain the mortgage. A. afterwards assumes to, and does, without the knowledge of B., sell to a stranger the mortgage given ostensibly to secure the $500 note which B. had purchased and paid for, and has in his possession. Is it possible that by such transactions B. loses his debt, or that the party to whom A. assumes to sell the mortgage acquires any interest in such note or debt? It seems to me the proposition is absurd, and only illustrates the fallacy of the contention of the respondent the Salt Springs Bank.

Tolman owned the bond in question—the obligation executed by Mary Mooney and her four children, which represented their indebtedness to Warner. In this action, Tolman's representatives are simply seeking to protect the title or ownership of such obligation or indebtedness. His title or ownership, or that of his representatives, is denied solely because the respondent the Salt Springs Bank obtained possession of the mortgage given to secure such obligation or indebtedness, and recorded an assignment thereof before a similar assignment given to Tolman had been recorded; and this notwithstanding that, concededly, the assignment to the bank was fraudulent as between Warner and Tolman, and although concededly the bank never had possession of the bond, but at all times after it was assigned to. Tolman it remained in the latter's possession.

It is useless to further reason upon the question involved. It seems to me that the authorities fully justify the conclusion that the appellants, the representatives of the estate of James Tolman, deceased, are entitled to any surplus which may arise from a sale of the mortgaged premises, to the extent of their claim, prior to and in preference to the claim of the respondent the Salt Springs Bank.

Ever since the decision in the case of Kortright v. Cady, supra, it has been held in this state that a tender of the debt to the mortgagee or his assignee discharges the land of the lien of the mortgage. Such holding could only have been made upon the theory that the debtor had a right to pay his debt to the owner of such debt, regardless of whoever might be the owner or holder of any security given for the payment of the same, but who did not own such debt. In the case at bar there should be no misunderstanding as to the material facts. Tolman in good faith assumed to, and did actually, buy the bond and mortgage in. question, and paid full value therefor. · Upon such purchase there was only delivered to him the bond, which he ever afterwards kept and retained in his possession. The Salt Springs National Bank, in equal good faith, and for value, assumed to purchase the same bond and mortgage, but there was only delivered to it the mortgage; the bond at that time being in the possession of Tolman, who neither did nor authorized any act to be done in his behalf which would indicate to the respondent bank or to any other person that he was not the owner of the bond which he had purchased, which was delivered to him, and which was then in his possession. The Salt Springs Bank at no time gained possession of the bond, or of the debt created or pledged thereby. It is not claimed that Tolman did any act or was guilty of any omission in the premises which would deprive him of the ownership of the bond which he bought and paid for, or which would impair his title thereto, unless it be claimed that his failure to record the assignment of such bond and mortgage constituted such a delinquency on his part as was sufficient to deprive him of his right, title, and interest in and to the bond in question as against the respondent the Salt Springs Bank. We think there is no provision of the statute, either in the recording act or elsewhere, which in any manner affects the rights of the appellants because of the failure of Tolman to record his assignment, and also that the question of the good faith of the bank is entirely im-

material to any issue presented by the facts of this case. As it seems to me, the law is conclusively settled adversely to the contention of the bank.

In Cooper v. Newland, 17 Abb. Prac. 342, in the opinion, written by James C. Smith, it was held, as stated in the headnote, as follows:

"It is well settled that a mortgage passes by an assignment of the bond to which it is collateral, on the ground that the incident follows the principal debt, but the bond does not pass by an assignment of the mortgage. The assignment of the mortgage without the bond in such a case is a nullity. The mortgage interest, as distinct from the debt created by the bond, has no determinate value, and is not a fit subject for an assignment."

In Merritt v. Bartholick, 36 N. Y. 44, in the headnote, it is said:

"The delivery of a mortgage by the mortgagee, unaccompanied by the bond it was given to secure, as collateral security for a debt of the mortgagee, does not transfer the title to such mortgage. A mortgage is only an incident to the debt it was given to secure, and cannot be separated therefrom, and a transfer of the mortgage without the debt is a nullity."

In Bergen v. Urbahn, 83 N. Y. 49, it was held that in an action to foreclose a mortgage, which by its terms was given to secure the payment of moneys as specified in the condition of a bond, the nonproduction of the bond by the plaintiff is evidence of the discharge of the mortgaged debt, and, if unexplained, is conclusive evidence against the plaintiff's right to recover.

In the case at bar, concededly, the respondent the Salt Springs Bank could not have produced the bond which it is alleged the mortgage was given to secure, for the reason that such bond had been bought and paid for, and was in the possession of Tolman.

In Munoz v. Wilson, 111 N. Y. 295, 18 N. E. 855, it is said in the opinion of the court (page 301, 111 N. Y., page 857, 18 N. E.), after a full discussion of the principle involved in the case at bar:

"It is only, we think, when a bond is shown to have accompanied a mortgage, and contains the only apparent evidence of the debt to which the mortgage is collateral, that it must be produced, or its nonproduction accounted for, on the trial. The theory upon which this is required is that the possession of the collateral security alone furnishes no conclusive evidence of the ownership of the debt secured thereby, as it is the mere incident of the bond, and non constat the bond may have been transferred to another party, who in that event would be entitled to the possession of the collateral security." Citing Merritt v. Bartholick, 36 N. Y. 44; Langdon v. Buell, 9 Wend. 80.

The cases referred to—and many more of similar import might be cited—only emphasize the proposition that the purchaser in good faith of a bond, the payment of which is secured by a mortgage, does not lose such bond, or the obligation therein contained, simply by the fact that he neglects to accept, if tendered, or, if accepted, to record, a mortgage which may have been given by the obligor to secure the payment of such bond.

We are led to conclude that, by the transaction between Warner and Tolman, Tolman became the absolute owner of the debt which was evidenced by the bond in question, and which was secured by the mortgage which was sold and delivered by Warner to the bank; that by such sale and delivery the bank acquired no title to or interest in the debt

which said mortgage purported to secure; and therefore that, as to it, the mortgage was of no value.

It seems to me that neither the recording act nor the good faith or diligence of the respondent the Salt Springs National Bank is of any consequence in this case; it being practically conceded that Tolman paid full value for the bond when delivered to him, and that neither he nor his representatives did any act which could estop him or them from asserting the ownership of the debt represented by such bond. I therefore conclude that the judgment should be reversed and a new trial ordered, with costs to the appellant to abide event.