## VICKERY v. INTERBOROUGH RAPID TRANSIT CO.

(Supreme Court, Appellate Division, First Department.   June 5, 1908.)

1. CARRIERS—CARRIAGE OF PASSENGERS—ACTIONS FOR INJURIES—EVIDENCE—SUFFICIENCY.

In an action by an alleged passenger for personal injuries claimed to have been received from a fall in a collision of trains in the subway and for paralysis resulting from a stroke of apoplexy several days later, evidence *held* to sustain a verdict for defendant.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Carriers, § 1312.]

2. EVIDENCE—WEIGHT AND SUFFICIENCY—TESTIMONY BY PARTY.

The jury may weigh and reject the uncorroborated testimony of a plaintiff if they do not believe it.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 20, Evidence, § 2438.]

Appeal from Trial Term.

Action by Robert Vickery against the Interborough Rapid Transit Company. From an order setting aside a verdict for defendant and granting a new trial, defendant appeals. Reversed, and verdict reinstated.

Argued before INGRAHAM, McLAUGHLIN, HOUGHTON, CLARKE, and SCOTT, JJ.

Chas. A. Gardiner (Charles E. Brown, of counsel, and Bayard H. Ames, and Vine H. Smith, on the brief), for appellant.

Henry W. Goodrich (George A. Coughlam, on the brief), for respondent

CLARKE, J. This is an appeal taken by the defendant from an order of the Trial Term setting aside a verdict rendered in favor of the defendant and granting a new trial upon the ground that the verdict was contrary to the evidence and contrary to law. The action was brought to recover for personal injuries alleged to have been sustained by plaintiff as a result of a collision between two subway trains on March 7, 1905. The plaintiff testified that he was in the first car of a train consisting of five cars which had stopped at the Twenty-Third street station; that he was standing in the car to the rear of the middle seats, holding on to two straps with his right hand; that he was facing the rear of the train. While this train was so standing at Twenty-Third street, the following train ran into the rear end of the last car. Plaintiff testified that, when the collision occurred, he lost his balance, was thrown forward, struck his elbow on the window, although he did not break the glass, and from there fell to the floor; that he did not strike his head. On the 10th of March the plaintiff suffered a stroke of apoplexy from which paralysis has resulted. Claiming that said paralysis was the direct result of the defendant's negligence, he sued for $100,000 damages.

The main question litigated upon the trial was whether the apoplexy and the resulting paralysis were caused by the fall and shock alleged to have been sustained in the collision. There was no question but that the plaintiff had suffered a stroke of apoplexy which resulted in paralysis. He produced medical testimony tending to support his contention which was controverted by the defendant. The case was thoroughly and carefully tried by experienced counsel on both sides. The jury by its verdict has determined that there was no causal connection between the paralysis and the collision. A careful consideration of the whole case convinces us that the verdict of the jury upon that issue is not only supported by the evidence, but that, if the verdict had been for the plaintiff, it would have been against the weight of evidence. The learned trial court set aside the verdict without other expression of its reasons therefor than that found in its order, which recites that it was because the verdict was contrary to the evidence and contrary to law. The plaintiff concedes upon this appeal that a question of fact was presented for the decision of the jury upon the liability of the defendant for this injury—that is, the paralysis—but urges that the order

setting aside the verdict was justified, because, irrespective of the apoplexy and the resulting paralysis, the plaintiff received other injuries consisting of bruises and contusions, damages for which, in any event, he was entitled to recover. It therefore becomes necessary to examine the evidence upon this point.

The plaintiff testified that he was standing in the front car. There were five cars in the train. The collision was a rear-end collision. He produces no witness who testified that he was in the car in which he claims he was, and no witness to corroborate his story of his fall. The defendant gave evidence of a prompt examination of that car, and that it was entirely uninjured; also, that no complaints had been received by it of injuries sustained by any other occupant of that car. The plaintiff testified that after the collision he arose and found a seat, and sat there until he was allowed to leave the car; that he did not report his accident or give his name to any one, policeman, conductor, or ticket agent; that after he left the car he walked up Park avenue to the Forty-Second street depot; that it was snowing and the walking was very bad; that he then went to the Manhattan Hotel and met a salesman of his, Mr. Morse, with whom he spent the evening; that this friend had never been in the subway; that plaintiff suggested that was a good chance for him to see it, and they took a trip in the subway together to the City Hall and back again after dinner, which they had had together at a restaurant; that they had business matters to talk over and talked them over until about half past 10, when he boarded the 11 o'clock train for Boston; that he arrived the next morning at Boston at a quarter past 7; that he did not go home to breakfast, but went directly to his office, and attended to his business regularly all that day; that that night he registered under an assumed name at Young's Hotel; that the next morning he went home, and went from there to business, which would be the 9th of March, two days after the accident; that he attended to his business throughout that day, staying longer in the office than usual, until 7 o'clock in the evening, then he went to supper and from there to the theater, and then took the midnight train to New York, arriving on the morning of the 10th of March; that after his arrival he breakfasted at a restaurant, and then went to the Manhattan Hotel; that, while talking with the clerk, all of a sudden he felt a sinking, and seated himself in a chair for a few minutes. Then he walked to the Forty-Second street station of the elevated shuttle train that connects with the Third avenue road, and took a car. While seated in the car, he found himself slipping, could not control himself, could not hold himself up. It was there he suffered the stroke of apoplexy, and it was from the elevated station that he was taken to the hospital in an ambulance.

Mr. Morse, the friend whom he met after the accident, testified to spending the evening with the plaintiff and riding together in the subway. He gave no testimony as to his appearance or condition or anything tending to show that at that time the plaintiff had received any injuries. The plaintiff's wife testified that she saw the plaintiff at their home in Boston on the 9th of March, and that he left home about quarter past seven in the morning; that "he looked

very badly—I mean very pale, very excited." This it will be recalled, was the morning after the plaintiff had spent the night at Young's Hotel. His son testified that on the same morning the plaintiff was very pale and nervous.

While the plaintiff testified that on the 8th of March he was suffering from pain in the back or the spine and his head, and that after the collision on the 7th of March he was bruised on the hip and the elbows, he was not corroborated in these particulars. There was some evidence that at the hospital he was discovered to have some bruises of a slight character, but in the meanwhile he had fallen in the elevated car when he received the stroke of apoplexy. Up to the time of his reception in the hospital, therefore, plaintiff is without corroboration as to the fact of his being in the first car of the train, his fall therein as a result of the collision, or as to any objective evidence of injuries therefrom, except that two days after the accident and after having spent the night at Young's Hotel his wife and son saw him in the morning pale and nervous. In the meantime he had taken a ride over the subway in which he received his accident with a friend within a few hours after the accident. He had traveled to Boston and back by night trains. He had put in two hard days of work, staying at his office until after 7 o'clock in the evening, and he had gone to the theater. As an interested witness, the jury had the right to weigh his evidence, and to reject it if they did not believe it, and it was within their province, upon this history of his movements immediately after the accident, to conclude either that he had not been injured at all, or in so trivial a way as not to be entitled to a money compensation. When they rejected the main issue as to injuries, it was quite within their province to also reject the uncorroborated claim for injuries not reported at the time to any agent of the defendant, or to the friend with whom he spent the ensuing evening, and of a nature, upon his own testimony, to in no way interfere with his travels, his business, or his amusement.

The learned trial court charged the jury:

"If you find that Mr. Vickery sustained injuries as the result of this accident, but was not afflicted with this apoplexy as the result of the accident, then it would be your duty to give him such a sum of money as you think would be a fair and reasonable compensation for the injuries that he did sustain."

He further charged:

"It may be that, if you should come to the conclusion that he sustained only bruises in the subway accident, then you will consider whether or not that interrupted his business at all, and take into consideration that fact, and award him just such a sum as you think he is justly entitled to for the loss of business."

And again:

"I want you to avoid any misapprehension. If you should find that the only injuries suffered by Mr. Vickery were the mere bruises and contusions which have been described to you, then you should go further, and see whether they caused any loss of his business or his earnings. If they did not, of course, you will award him nothing for them, and then, of course, you cannot bring a separate statement of what amount you allow for the loss in earnings."

The plaintiff was entirely satisfied with the charge in this respect, took no exception, and asked for no further instruction. So the court specifically left two issues to the jury, namely, the direct injuries claimed, consisting of bruises, and the second, the more remote, the paralysis. It resolved both questions in favor of the defendant.

In Munoz v. Wilson, 111 N. Y. 295, 18 N. E. 855, the court said:

"Indeed, the mere fact that a witness is the real party to an action and interested in its result has been deemed sufficient to require its credibility to be submitted as a question of fact, and more especially so when the testimony is improbable in itself or inconsistent with other circumstances of the case."

In Wimpleberg v. Yonkers Railroad Co., 83 App. Div. 19, 81 N. Y. Supp. 963, the court said:

"In the present case, the jury could have believed a part and rejected a part of the plaintiff's testimony as he was a party in interest."

In Woolsey v. B. H. R. Company, 123 App. Div. 631, 108 N. Y. Supp. 16, the court said:

"The plaintiff testified that she had never ridden on one of these cars before, but the jury were not bound to believe her."

Upon the whole case, it appears that the verdict as rendered was neither contrary to the evidence nor contrary to law.

Therefore the order appealed from should be reversed, and the verdict for the defendant reinstated, with costs. All concur.